MORLEY BROTHERS *v.* CARROLLTON TOWNSHIP
SUPERVISOR.

1. TAXATION—CONSTRUCTION OF CONSTITUTION—ASSESSED VALUA-
   TION—EQUALIZATION.

   The term "assessed valuation," as used in the tax limitation
   amendment of the Constitution, refers to the equalized valua-
   tion which must be used as the basis for determining the
   amount of taxes which can be levied by a township (Const.
   1908, art. 10, § 21, as added in 1932).

2. JUDGMENT—TOWNSHIPS—SUPERVISORS—ASSESSMENT.

   After certified copies of an unpaid judgment against a town-
   ship have been served upon the supervisor thereof, it is his
   statutory duty to assess the amount of such judgment on the
   assessment roll for the ensuing tax year (3 Comp. Laws
   1929, § 14690).

3. TAXATION—JUDGMENT—MANDAMUS—SUPERVISOR—COUNTY TAX
   ALLOCATION BOARD.

   Where a supervisor has failed to assess the amount of a judg-
   ment against his township on the assessment roll thereof and
   is thereafter required to do so by writ of mandamus, he should
   submit such judgment item to county tax allocation board as
   a proposed expenditure for the next tax year (3 Comp. Laws
   1929, § 14690; Act No. 62, Pub. Acts 1933, as amended by
   Act No. 40, Pub. Acts 1937, and Act No. 150, Pub. Acts 1941).

4. SAME—STATUTES—JUDGMENT—COUNTY TAX ALLOCATION BOARD.

   The statute requiring inclusion of judgments against a township
   on assessment roll must be read and construed together with
   statute creating a county tax allocation board, as the latter
   statute supplements, and does not repeal, the former (3 Comp.
   Laws 1929, § 14690; Act No. 62, Pub. Acts 1933, as amended
   by Act No. 40, Pub. Acts 1937, and Act No. 150, Pub. Acts
   1941).

5. TOWNSHIPS—REVISION OF BUDGET—PAYMENT OF JUDGMENT—
   COUNTY TAX ALLOCATION BOARD.

   The power of a township to revise its budget and alter its levy
   of taxes is absolute but it must be exercised fairly and not

608 MICHIGAN REPORTS. [Dec.

arbitrarily or capriciously for the purpose of preventing payment of judgments, since the county tax allocation board has no power to reduce or eliminate any specific items of a township's budget (3 Comp. Laws 1929, § 14690; Act No. 62, Pub. Acts 1933, as amended by Act No. 40, Pub. Acts 1937, and Act No. 150, Pub. Acts 1941).

6. SAME—OFFICERS—PRESUMPTIONS—JUDGMENTS.

It must be presumed that township officials charged with the responsibility and duty of levying and collecting taxes for essential governmental purposes will not act capriciously and arbitrarily in the performance of such important duties and they will not be permitted to continue indefinitely to budget governmental expenses in such manner as to permanently evade payment of judgments against the township (3 Comp. Laws 1929, § 14690; Act No. 62, Pub. Acts 1933, as amended).

7. SAME—COUNTY TAX ALLOCATION BOARD—PRESUMPTIONS—CONSTITUTIONAL LIMITATION ON TAX RATE.

It must be presumed that the county tax allocation board will not allocate total tax rates in excess of and contrary to the 15-mill constitutional tax limitation (Const. 1908, art. 10, § 21, as added in 1932; Act No. 62, Pub. Acts 1933, as amended).

Appeal from Saginaw; O'Neill (James E.), J. Submitted October 3, 1945. (Calendar No. 43,121.) Decided December 3, 1945. Rehearing denied January 7, 1946.

Petition by Morley Brothers, a Michigan corporation, and others for writ of mandamus compelling Herbert Bruce, Supervisor of Carrollton, to assess upon taxable property certain judgments. Defendant reviews order granting writ by appeal in the nature of certiorari. Affirmed.

*William C. O'Keefe,* for plaintiff.

*David E. McLaughlin,* for defendant.

BOYLES, J. This is an appeal by the defendant in the nature of certiorari from a peremptory writ of mandamus granted by the circuit court for Sagi-

naw county, requiring the defendant, as supervisor of Carrollton township in said county, to assess upon the taxable property of the township the amount of certain judgments held against the township by plaintiffs herein. Appellant claims that the county tax allocation board has allocated to the township for township purposes only such percentage of the tax millage as will permit the payment of ordinary operating expenses of the township for governmental purposes, and that obedience to the writ would necessitate the assessment of taxes in excess of the constitutional 15-mill limitation.

It is undisputed that the plaintiffs herein have unsatisfied judgments against the township aggregating about $9,000, that certified copies of said judgments have been served on the supervisor of the township in accordance with 3 Comp. Laws 1929, § 14690 (Stat. Ann. § 27.1654), and that the supervisor has refused to spread the amounts of said judgments on the tax roll. It is also undisputed that the 15-mill limitation has not been raised by a vote of the electors of said township, and that a division of the taxes under said limitation must be made between two school districts within the township, the township itself, and the county of Saginaw.

In the tabulation below, reference is made to the assessed valuation of the property in the township. The record does not disclose what action was taken by the county equalization board for any of the years referred to in the tabulation before us. See 1 Comp. Laws 1929, § 3422 (Stat. Ann. § 7.52). The assessed valuations, as they appear in the tabulation below for the years 1944–1945 and 1945–1946 are taken from the proposed budgets submitted for those years to the county tax allocation board. We conclude that the "assessed valuations" thus shown are the valuations as equalized by the

county equalization board. The term "assessed valuation" as used in the 15–mill tax limitation amendment refers to the equalized valuation, which must be used as the basis for determining the amount of taxes which can be levied by the township under the 15-mill limitation. *St. Ignace City Treasurer* v. *Mackinac County Treasurer*, 310 Mich. 108; *Waterford Township* v. *Oakland County Tax Allocation Board*, ante, 556. The following tabulation taken from the record indicates the assessed valuation of the taxable property in the township for the years 1944–1945, 1945–1946, and a tentative or proposed amount for the assessed valuation for the year 1946–1947; also the amounts of the proposed expenditures by the township for township purposes as shown by the proposed budgets submitted to the county tax allocation board for the years 1944–1945 and 1945–1946, and tentative proposed expenditures for the year 1946–1947; and also the estimated revenue of the township for those years from all sources, including taxation:

|           | Assessed Valuation | Proposed Expenditures | Expected Income |
|-----------|--------------------|-----------------------|-----------------|
| 1944–1945 | $1,879,975         | $15,898.68            | $15,985.85      |
| 1945–1946 | 1,873,800          | 15,673.86             | 15,673.39       |
| 1946–1947 | 2,440,775          | 15,762.62             | 19,423.78       |

We conclude from the record that the figures for the year 1946–1947 are tentative, appearing in an exhibit received in evidence, and have not yet been submitted to the county tax allocation board for the fixing of a tax rate for the year 1946–1947. The figures for these three years were submitted by the township for the purpose of showing that the judgments could not be included in the proposed budgets and assessed on the tax rolls without the taxes exceeding the 15-mill limitation.

For the first two of the above years, no request was made to the county tax allocation board for millage allowance for tax money to pay on the judgments. For the year 1946–1947 the exhibit received in evidence proposes to request 1.5 mills to pay $3,661.16 on obligations, included among which plaintiffs' judgments were listed, along with another admitted debt not reduced to judgment. Aside from the proposal *in futuro* appearing in the tentative 1946–1947 budget, the budget requests submitted by the township to the county tax allocation board (for the first two years) as shown in the above tabulation were for allocation of millage to the township for current expenditures for officers' salaries and fees, office expense, supplies, insurance, poor fund, fire prevention, street lighting, hydrant rental, water and sewer, and cleaning ditches.

For the purposes of this case, the Michigan Constitution (1908), art. 10, § 21, being the 15-mill tax limitation amendment adopted in 1932, limits the total amount of taxes which can be assessed against property in Carrollton township for all purposes in any 1 year to 1½ per cent. of the equalized valuation of said property. As a result of the adoption of this 15-mill amendment in 1932 it became necessary for the legislature to set up some procedure whereby there might be a division of the rate of taxation between counties, townships, municipal corporations, school districts and other local units of government, in order that they might keep within the tax ceiling imposed by the amendment; otherwise a chaotic tax condition was sure to ensue where taxing units were each levying a maximum of tax under the 15-mill limitation, unless there was some legal authority to settle their respective limits in levying a tax. The legislature promptly recognized

the necessity for action and by Act No. 62, Pub. Acts 1933 (Comp. Laws Supp. 1940, § 3551–21 *et seq.,* Stat. Ann. § 7.61 *et seq.*), provided the necessary machinery, by creating a tax allocation board in each county. See Act No. 62, § 5, Pub. Acts 1933, as last amended by Act No. 150, Pub. Acts 1941 (Comp. Laws Supp. 1943, § 3551–25, Stat. Ann. 1944 Cum. Supp. § 7.65). Sections 9 and 10 of this act (Comp. Laws Supp. 1940, §§ 3551–29, 3551–30, Stat. Ann. §§ 7.69, 7.70) require each county, township, village, city, school district, or other division, district or organization ("local units") to prepare each year a budget containing an itemized statement of its proposed expenditures and estimated revenues and file the same with the county tax allocation board on or before the second Monday in May of each year. Among other things, section 9 (Comp. Laws Supp. 1940, § 3551–29, Stat. Ann. § 7.69) requires that items for the payment of interest and principal on obligations incurred prior to December 8, 1932, and those incurred subsequent to that date be listed separately. Plaintiffs' several judgments were obtained late in 1944, and certified copies of the same were served on the supervisor of Carrollton township not later than January 11, 1945, with demands that the amounts be spread on the tax roll as provided by 3 Comp. Laws 1929, § 14690. The supervisor not only refused to spread such taxes on the assessment roll for 1945, but failed to list these obligations in the proposed budget submitted to the county tax allocation board for the tax year 1945–1946. After plaintiffs' petition for mandamus was filed in the court below and order to show cause was issued in the instant case, Carrollton township on May 9, 1945, apparently prepared a tentative proposed budget for 1946–1947 and offered the same in evidence, showing the judgment

and debt obligations hereinbefore referred to, and a request for 1.5 mills to pay $3,661.16 thereon.

The circuit court heard this case on May 18, 1945, and on that date granted a writ of mandamus commanding the defendant supervisor of Carrollton township to assess plaintiffs' judgments on the assessment roll. Inasmuch as only 8 days had elapsed between May 9th, the date of the tentative proposed budget *in futuro* for 1946–1947, and May 18th, the date of the hearing in court and the issuance of the writ of mandamus, it is obvious that the tentative proposed budget for 1946–1947 could not have been filed with and acted upon by the county tax allocation board at the time the writ of mandamus was issued.

It was the plain statutory duty of the supervisor of Carrollton township to assess the amount of plaintiffs' judgments on the assessment roll for the tax year 1945–1946. 3 Comp. Laws 1929, § 14690, provides in part that whenever a judgment shall have been recovered against any township, in a court of record, the clerk of the court shall, on application therefor, deliver to the party in whose favor the judgment was rendered, a certified transcript thereof, which may be filed with the supervisor of the township. The statute then provides that it shall be the duty of the supervisor to assess the amount of the judgment, interest and costs, upon the next tax roll. Having failed to do that, the defendant supervisor as the first step toward compliance with the writ of mandamus granted by the circuit court on May 18th should have submitted to the county tax allocation board the amount of the judgments, as a proposed expenditure for 1945–1946. The county tax allocation board, under the provisions of section 11 of the act governing its powers and duties, as amended by Act No. 40, Pub. Acts

1937 (Comp. Laws Supp. 1940, § 3551-31, Stat. Ann. 1944 Cum. Supp. § 7.71),* then would have had an opportunity to ·consider the amounts of these judgments in determining the tax rates to be allocated to the township, the two school districts and the county, after examination of the various budgets of the local units. Section 11 of the tax limitation act, *supra,* states that no local unit shall be allowed a tax rate in excess of what would be required according to its proposed budget. In other words, Carrollton township would not be allowed a tax rate by the county tax allocation board sufficient to pay the judgments in whole or in part as long as the township failed to include such proposed expenditure in its budget along with other proposed expenditures for township purposes. By refusing to include the amount of the judgments in its annual budgets, the township thus might successfully circumvent the statutory mandate which requires the amount of the judgments to be assessed on the next tax roll, the only means whereby judgments against the township can be collected.

The appellant contends that the statutory requirement that taxes to pay judgments must be assessed on the next tax roll has been repealed by the 15-mill amendment and subsequent acts in pursuance thereof. With that contention we do not agree. Admittedly there is some difficulty in reconciling the earlier statute requiring that the amount of a judgment must be assessed on the next tax roll with subsequent legislation enacted as the result of the adoption of the 15-mill tax limitation amendment. However, Act No. 62, Pub. Acts 1933, creating a tax allocation board in each county, supplements 3

---

* Amendment by Act No. 158, Pub. Acts 1945, effective May 16, 1945, has no bearing on the issue.

Comp. Laws 1929, § 14690, but does not repeal it. These statutes must be read and construed together. While the earlier act requires the supervisor to spread the amount of the judgments on the next assessment roll, under the later act the county tax allocation board is given the power to decide how much millage shall be allocated for township purposes within the 15-mill limitation. Subsection (i) of section 11 of the tax allocation act, provides that the county tax allocation board cannot reduce or eliminate specific items in the budget, and then further provides that a *local unit* may revise its budget, and amend or alter *its tax levy.*

"The approval by the board of a maximum tax rate for any local unit, which will necessitate a reduction in the total proposed expenditures as listed in the budget of such local unit, shall not be construed as a reduction or elimination of any specific items in such list of proposed expenditures, and the board shall not have the power to reduce or eliminate any such specific items. Any local unit in the budget of which a reduction in the total proposed expenditures is necessitated by the action of the board, or the State tax commission in case of appeal, shall have power to revise its budget and amend and alter its tax levy to the extent made necessary by such action, any law or charter provisions to the contrary notwithstanding." Act No. 62, § 11 (i), Pub. Acts 1933, as amended by Act No. 40, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 3551-31, Stat. Ann. 1944 Cum. Supp. § 7.71).

Under this provision in the later act, the township may alter the tax levy to the extent made necessary by the action of the county tax allocation board. Conceivably, under this power the township might

annually attempt to revise its budget and alter its tax levy to the extent of eliminating the levy of taxes to pay the judgments. However, while this authority is thus given to the township, it must be exercised fairly and not arbitrarily or capriciously for the purpose of preventing payment of judgments. It must be presumed that public officials charged with the responsibility and duty of levying and collecting taxes for essential governmental purposes will not act capriciously and arbitrarily in the performance of such important duties. It must also be presumed that the county tax allocation board will not allocate total tax rates in excess of and contrary to the 15-mill constitutional tax limitation.

The result of upholding the claims of the township in this case would be that the township itself would have the absolute power to decide whether it should ever pay plaintiffs' judgments. Plaintiffs have property rights in the judgments of which they cannot be deprived by capricious and arbitrary acts of their judgment debtor. The township will not be permitted to continue indefinitely to budget its governmental expenses in such manner as to permanently evade payment of the judgments. The question before us for decision is whether the defendant township may be compelled by mandamus to perform a plain statutory duty. In affirming the granting of the writ we apprehend that no further resort to the courts in this matter will be necessary.

The order granting the writ is affirmed, with costs.

STARR, C. J., and NORTH, CARR, BUTZEL, BUSHNELL, SHARPE, and REID, JJ., concurred.