AMERICAN AXLE & MANUFACTURING, INC v
CITY OF HAMTRAMCK

Docket No. 112053. Argued October 13, 1999 (Calendar No. 2). Decided
February 1, 2000.

American Axle & Manufacturing, Inc., sought a refund of a city of
Hamtramck tax before the Tax Tribunal on the ground that the levy
violated the Headlee Amendment because it was not approved by
the voters. The city had levied the tax after a consent judgment in a
case involving toxic substances on certain real property it had sold
was entered against it. The Tax Tribunal granted summary disposi-
tion for the plaintiff, finding that levying the additional millage
without a vote of the electors was a violation of Const 1963, art 9,
§ 6. The Court of Appeals, SAWYER, P.J., and SAAD and GAGE, JJ.,
affirmed, finding violations of the Headlee Amendment, the home
rule cities act, and the Hamtramck City Charter. 227 Mich App 135
(1997) (Docket No. 191628). The city appeals.

In an opinion per curiam, signed by Justices CAVANAGH, KELLY,
TAYLOR, YOUNG, and MARKMAN, the Supreme Court held:

The city's levy under MCL 600.6093; MSA 27A.6093 to pay the
judgment did not constitute a violation of the Headlee Amendment,
the home rule cities act, or the Hamtramck City Charter. Section
6093 was a preexisting authorization for the levy of the judgment
tax, and thus was not subject to voter approval.

1. Taxes authorized by law at the time the Headlee Amendment
was ratified are exempt from the requirement of voter approval.
This includes the levying of previously authorized taxes even where
they were not being levied at the time Headlee was ratified and
even though the circumstances making the tax or rate applicable
did not exist before that date. Changes in circumstances after the
ratification of Headlee may make levy of taxes constitutional
where, without the changed circumstances, the increases would
have been forbidden.

2. Subsection 6093(1), which provides for the levying of a tax in
the amount of a judgment against a city on the tax rolls, was in
effect at the time the Headlee Amendment was approved. The stat-
ute has been interpreted to authorize, and indeed to require, city
assessors or township supervisors to assess taxes to pay judg-
ments, even where doing so would compel a levy in excess of oth-
erwise applicable tax limitations. Nothing in the Headlee Amend-

ment can be construed as being intended to treat § 6093 as anything other than a previously authorized tax that is exempt from the election requirement.

3. Section 6093 cannot be characterized as merely procedural. First, it constitutes the only authority for judgment tax levies. Second, when originally enacted, the judgment tax provisions now found in § 6093 were in a separate statute, 1887 PA 312, enacted years before the provision was included in the first Judicature Act, and long before it was placed in the Revised Judicature Act. It does not lose its substantive character because it was readopted as part of a codification.

4. The specific provisions of § 6093 control otherwise applicable limitations of the home rule cities act. Imposition of the judgment levy does not violate Hamtramck's charter taxation limitation.

Justice CORRIGAN, joined by Chief Justice WEAVER, concurring, stated that MCL 117.3(g); MSA 5.2073(g) and MCL 117.5(a); MSA 5.2084(a) should be construed to allow a home rule city to raise tax rates above the charter limitation only when the Legislature has expressed its intent that a specific tax fall outside the limitation. In this case, the judgment levy statute, MCL 600.6093(1); MSA 27A.6093(1), contains the requisite expression of legislative intent that the tax fall outside the charter limit.

When read in context, the phrase "otherwise provided by law" in MCL 117.3(g); MSA 5.2073(g) is not the equivalent of the "authorized by law" language of the Headlee Amendment, but rather references whether the Legislature has specifically excepted a tax from the maximum rate. An examination of statutes granting a city authority to levy specific taxes supports the construction of MCL 117.3(g); MSA 5.2073(g) requiring some expression of legislative intent that a specific tax fall outside the charter limit before the city may exceed the charter limitation. Further, Supreme Court decisions do not support the majority's construction of the statute. Contrary to the majority's conclusion, the Supreme Court did not determine before the 1973 amendment of the home rule cities act that the mere authority to levy a tax for a specific purpose authorizes the city to exceed charter and statutory limitations. Rather, case law reveals that the Supreme Court examined the provisions of the particular statute for an expression of legislative intent that the tax fall outside the otherwise applicable limitations. Accordingly, the majority's conclusion is contrary both to the plain language of MCL 117.3(g); MSA 5.2073(g), as well as Supreme Court construction of the statute before the 1973 amendment.

Reversed.

*Jackier, Gould, Bean, Upfal & Eizelman, P.C.* (by *A. Jeffrey Bean*), and *Andrew J. Bean*, Special Counsel, for appellee.

*Miller, Canfield, Paddock & Stone, P.L.C.* (by *Larry J. Saylor, Samuel J. McKim III, P.C.*, and *Joanne B. Faycurry*), for appellant.

Amici Curiae:

*Bodman, Longley & Dahling, L.L.P.* (by *Charles N. Raimi* and *R. Craig Hupp*), for Wayne County.

*Dickinson, Wright, P.L.L.C.* (by *Kester K. So, Peter H. Ellsworth*, and *Terence M. Donnelly*), for Michigan Municipal League.

PER CURIAM. A civil judgment was entered against defendant city of Hamtramck, and it assessed the unpaid amount of the judgment on the tax rolls under § 6093 of the Revised Judicature Act.[1] Plaintiff American Axle & Manufacturing, Inc., paid the tax and petitioned the Michigan Tax Tribunal for a refund. The Tax Tribunal found for American Axle on the ground that adding the judgment to the tax rolls violated the Headlee Amendment, Const 1963, art 9, §§ 6, 25-34. The Court of Appeals affirmed.[2]

We conclude that § 6093, which authorizes levying the judgment on the tax rolls, constituted preexisting authority for that taxation, and thus is exempt from the Headlee Amendment's election requirement. We also conclude that the judgment levy does not violate the home rule cities act, MCL 117.1 *et seq.*; MSA 5.2071 *et seq.*, or the Hamtramck charter. Accordingly,

---

[1] MCL 600.6093; MSA 27A.6093.

[2] 227 Mich App 135; 575 NW2d 296 (1997).

we reverse the judgment of the Court of Appeals and
the order of the Michigan Tax Tribunal.

I

In 1984, defendant city of Hamtramck sold property
to Freezer Services of Michigan as part of a redevel-
opment plan. The city warranted that there were no
toxic or hazardous substances on the property. How-
ever, such substances were discovered, and Freezer
Services sued. The case was settled, and a consent
judgment against the city was entered in the amount
of approximately $3 million. After some intervening
litigation, the city included a judgment levy of 30
mills in its 1994 tax bills under § 6093.

Plaintiff American Axle paid its tax bill, but then
filed a petition with the Michigan Tax Tribunal seek-
ing a refund on the ground that the levy violated the
Headlee Amendment because it was not approved by
the voters.

The Tax Tribunal granted summary disposition for
American Axle, finding that levying the additional mil-
lage without a vote of the electors constituted a viola-
tion of art 9, § 6.

The city appealed, but the Court of Appeals
affirmed, finding violations both of Headlee and of
the home rule cities act[3] and the Hamtramck City
Charter.

II

The Headlee Amendment, adopted by referendum
effective December 23, 1978, amended Const 1963, art

---

[3] MCL 117.1 et seq.; MSA 5.2071 et seq.

9, § 6, and added §§ 25-34. Art 9, § 6, limits total property taxes to 15 mills without a vote of the electors, but allows the electors to approve an additional 35 mills. That section includes two exceptions to that limitation. Additional millage may be levied to repay certain bonds approved by electors, and taxes may be imposed "for any other purpose the tax limitations of which are provided by charter or by general law." Art 9, § 6, was amended to incorporate the sections added by Headlee:

> The foregoing limitations shall not apply to taxes imposed for the payment of principal and interest on bonds approved by the electors or other evidences of indebtedness approved by the electors or for the payment of assessments or contract obligations in anticipation of which bonds are issued approved by the electors, which taxes may be imposed without limitation as to rate or amount; or, *subject to the provisions of Section 25 through 34 of this article*, to taxes imposed for any other purpose by any city, village, charter county, charter township, charter authority or other authority, the tax limitations of which are provided by charter or by general law. [Emphasis added.][4]

One of the sections added by Headlee, art 9, § 31, adds the requirement of voter approval of new taxes. However, it exempts taxes authorized by law at the time the section was ratified:

> Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon.

---

[4] The Headlee Amendment added the emphasized language.

We have not previously had occasion to deal with this subject. However, we agree with the decisions of several panels of the Court of Appeals that the Headlee exemption of taxes authorized by law when the section was ratified permits the levying of previously authorized taxes even where they were not being levied at the time Headlee was ratified and even though the circumstances making the tax or rate applicable did not exist before that date. For example, in *Bailey v Muskegon Co Bd of Comm'rs*, 122 Mich App 808; 333 NW2d 144 (1983), the Court of Appeals held that the county was authorized to levy an accommodations tax, even though the tax was first levied after Headlee was ratified. The Court explained:

> The Muskegon County tax is unconstitutional, inasmuch as it did not receive voter approval, unless it can be determined that it was "authorized by law" prior to December [23], 1978, the date on which the Headlee Amendment was ratified. Defendants contend, the trial judge found, and we agree, that the term "authorized by law" does not require that a tax actually be levied on the date that the Headlee Amendment became effective. Rather, it requires only that a local government be *empowered* to levy the tax on the date that the Headlee Amendment was ratified, even if the local government had not exercised its authority. [122 Mich App 821 (emphasis in original).]

In several cases, changes in circumstances after the ratification of Headlee have been found to make levy of taxes constitutional where, without those changed circumstances, the increases would have been forbidden. In *Smith v Scio Twp*, 173 Mich App 381, 384; 433 NW2d 855 (1988), at the time Headlee was ratified the township was a general law township with its taxing authority limited to 1.16 mills. In 1986, the voters

approved incorporation as a charter township. The charter township act, MCL 42.1 *et seq.*; MSA 5.46(1) *et seq.*, authorizes levies of up to 5 mills. The Court of Appeals held that the plain language of art 9, § 31, allowed the township board to increase taxes to 5 mills, even though there was no separate approval of that tax increase. The Court said:

> The plain language of Headlee prohibits a local government from levying a tax in excess of that permitted by law or charter and it prohibits increasing the authorized tax rate without approval of the electors. But nowhere does Headlee require a direct vote of the electors in order to permit a local unit of government to increase taxes if the local unit of government has the authority by law or charter to levy the increase. [173 Mich App 381.]

Similarly, in *Saginaw Co v Buena Vista School Dist*, 196 Mich App 363, 364-365; 493 NW2d 437 (1992), in 1974 county voters had approved a resolution limiting school districts to a tax levy of 9.05 mills. However, the resolution also provided the districts located entirely within one city or charter township could levy 10.05 mills. At the time the Headlee Amendment was ratified the school district was located in two townships, and therefore was limited to 9.05 mills. In 1990, the district boundaries were redrawn so that the district was located within one township. Relying on *Bailey*, the Court of Appeals allowed the district to levy the higher rate:

> The Headlee Amendment requires voter approval only if a unit of local government wants to impose taxes at a rate higher than that authorized by law at the time of its adoption. Const 1963, art 9, § 31. In 1978, school districts in Saginaw County located entirely within a charter township were authorized by law to levy taxes at a rate of 10.05 mills.

We find that, because it is now located entirely within Buena Vista Charter Township, defendant's tax rate of 10.05 mills is not above the rate authorized by law at the time the Headlee Amendment was ratified. The category of school district into which defendant now fits existed in 1978, the tax in question was authorized by law (it was not a new kind of tax), and the rate (10.05 mills) was an authorized rate. When defendant's geographical configuration changed, it then became eligible to tax according to the applicable preexisting tax structure. Furthermore, before the Headlee Amendment, a simple rearrangement of boundaries would have empowered the defendant to increase the tax from 9.05 to 10.05 mills. That is all that occurred post-Headlee. Therefore, no voter approval was required for defendant to raise its millage to 10.05 mills. [196 Mich App 366.]

See also *Taxpayers United for Michigan Constitution, Inc v Detroit*, 196 Mich App 463; 493 NW2d 463 (1992).

III

Thus, the key question presented in this case is whether RJA, § 6093, which authorizes levying the amount of the judgment on the tax rolls, is exempt from the Headlee election requirements because it was a tax "authorized by law" at the time the Headlee Amendment was ratified.[5]

---

[5] A judgment levy tax falls within the exception contained in Const 1963, art 9, § 6, because it is a tax which has "tax limitations" provided by "general law." " 'A general law is one which includes all persons, classes and property similarly situated and which come within its limitations.' " *Tribbett v Village of Marcellus*, 294 Mich 607, 618; 293 NW 872 (1940), quoting *Punke v Village of Elliott*, 364 Ill 604, 608-609; 5 NE2d 389 (1936). The judgment levy statute is such a law because it applies to all holders of judgments against townships, cities, and villages. It places a limit on the amount of the tax by requiring the addition of "the total amount of the judgment" to existing taxes.

RJA, § 6093(1) provides for the levying of the amount of the judgment on the tax rolls. The statute provides:

> Whenever judgment is recovered against any township, village, or city, . . . the clerk of the court shall, on the application of the party in whose favor judgment is rendered, . . . make and deliver to the party so applying a certified transcript of the judgment, showing the amount and date thereof . . . . The party obtaining the certified transcript may file it . . . with the assessing officer or officers of the city or village, if the judgment is against a city or village. The supervisor or assessing officer receiving the certified transcript or transcripts of judgment shall proceed to assess the amount thereof with the costs and interests from the date of rendition of judgment to the time when the warrant for the collection thereof will expire upon the taxable property of the township, city, or village upon the then next tax roll of such township, city, or village, without any other or further certificate than the certified transcript as a part of the township, city, or village tax, adding the total amount of the judgment to the other township, city, or village taxes and assessing it in the same column with the general township, city, or village tax.

This provision was in effect at the time the Headlee Amendment was approved, and such statutes have a long history in Michigan law.[6] Those statutes have uniformly been interpreted to authorize, and indeed to require, city assessors or township supervisors to assess taxes to pay judgments, even where doing so would compel a levy in excess of otherwise applicable tax limitations. See *Hammond v Place*, 116 Mich

---

[6] The current provision has its origins in 1887 PA 312, and has been carried forward since that time. See 1897 PA 235, 1897 CL 10483; 1915 PA 314, ch XXIV, §§ 5-7; 1929 CL 14690-14692; 1948 CL 624.5-624.7. Earlier statutes had comparable provisions, e.g., 1883 PA 63; 1871 CL 463, 6630; 1857 CL 331, 4917.

628, 632; 74 NW 1002 (1898) ("[The statute] clearly provides for the payment of judgments, exclusive of the limitations to taxation established by municipal charters"); *Shippy v Mason*, 90 Mich 45, 48; 51 NW 353 (1892) ("It is not necessary that the common council shall authorize the assessment of this judgment. The common council has no power to pass upon its validity, or to prevent its assessment"); *Hazel Park v Municipal Finance Comm*, 317 Mich 582; 27 NW2d 106 (1947) (following *Hammond* and *Shippy*).[7]

These cases, of course, preceded the ratification of the Headlee Amendment, and thus we must consider whether Headlee abrogates or eliminates the authorization § 6093 provides for the levying of taxes to pay judgments. However, we see nothing in the Headlee Amendment that can be construed as being intended to treat § 6093 as anything other than a previously

---

[7] The one case on which the Court of Appeals relies for the contrary position is *Morley Bros v Carrollton Twp Supervisor*, 312 Mich 607; 20 NW2d 743 (1945). The Court of Appeals said:

The Michigan Supreme Court held that although there was some difficulty in reconciling the statute requiring that the amount of a judgment must be assessed on the next tax roll with subsequent legislation enacted as the result of the adoption of the fifteen-mill tax limitation under Const 1908, art 10, § 21, construing the acts together mandated that while the township could not avoid inclusion of a judgment in its budget in order to avoid payment, nevertheless, the county tax allocation board, to satisfy a judgment, must reduce other budgeted amounts so that the resulting tax rate falls within the fifteen-mill limitation. [227 Mich App 145.]

The flaw in reliance on *Morley* is the difference in the constitutional provisions in question. The provision in question in *Morley Bros*, Const 1908, art 10, § 21, permitted no exceptions to the 15-mill limitation. This is in clear contrast to Headlee's language permitting the levy of taxes authorized by previous legislation.

authorized tax that is exempt from the election requirement.

The plain language of art 9, § 31, excludes from its scope the levying of a tax, or an increased rate of an existing tax, that was authorized by law when that section was ratified. In construing provisions of our constitution, the primary rule is that of "common understanding." *Federated Publications, Inc v Michigan State Univ Bd of Trustees*, 460 Mich 75, 84; 594 NW2d 491 (1999). The Court of Appeals, however, did not analyze the language of art 9, § 31, but rather primarily examined drafters' notes relating to the amendment. This reliance on extrinsic evidence was inappropriate because the constitutional language is clear.[8] As Justice COOLEY said:

> The object of construction, as applied to a written constitution, is *to give effect to the intent of the people in adopting it.* In the case of all written laws, it is the intent of the lawgiver that is to be enforced. But this intent is to be found in the instrument itself. . . . "Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction." [Cooley, Constitutional Limitations (Little, Brown and Company, 1868), p 55.]

We have often applied these principles in interpreting constitutional provisions. For example, in *Durant v Michigan*, 456 Mich 175, 191-192; 566 NW2d 272 (1997), also a Headlee Amendment case, this Court said:

---

[8] We note, in addition, that we have previously disapproved use of those notes given that they were not published until after the Headlee Amendment was ratified. *Durant v State Bd of Ed*, 424 Mich 364, 382, n 12; 381 NW2d 662 (1985).

In *Traverse City School Dist v Attorney General*, 384 Mich 390, 405; 185 NW2d 9 (1971), we stated that the primary rule of constitutional interpretation is the rule of "common understanding" described in 1 Cooley, Constitutional Limitations (8th ed), p 143:

"A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it. 'For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed.' . . ."

See also *Bolt v City of Lansing*, 459 Mich 152, 160; 587 NW2d 264 (1998); *Council of Organizations & Others for Education About Parochiaid, Inc v Governor*, 455 Mich 557, 569; 566 NW2d 208 (1997).

The issue involved in this case was squarely presented in *Detroit v Highland Park*, 878 F Supp 87 (ED Mich, 1995). The taxpayer contended that a writ of mandamus to force the levying of taxes in excess of 20 mills without voter approval was unconstitutional. The court rejected that view:

The Headlee Amendment does not prevent imposition of a tax or tax increase that was authorized prior to the time the Headlee Amendment took effect. *Taxpayers United v City of Detroit*, 196 Mich App 463; 493 NW2d 463 (1992). MCL 600.6093 [MSA 27A.6093] was enacted prior to the Headlee Amendment. Therefore, a tax increase necessitated by a valid court judgment is not within the prohibitions of the Headlee Amendment. [*Id.* at 89.]

See also *Bylinski v Allen Park*, 8 F Supp 2d 965 (ED Mich, 1998).

While these federal court decisions are not precedentially binding on questions of Michigan law, we agree with the courts' analyses. Section 6093 was a preexisting authorization for the levy of the judgment tax, and thus the levy is not subject to voter approval.

IV

The Court of Appeals based much of its analysis on the view that the Revised Judicature Act, of which § 6093 is part, is a procedural statute not designed to "advance social, industrial or commercial policy in substantive areas." *Connelly v Paul Ruddy's Equipment Repair & Service Co*, 388 Mich 146, 151; 200 NW2d 70 (1972). It reasoned that § 6093 provides the procedure for levying a judgment tax, but does not give specific statutory authority to supersede existing taxation levels.

However, while many provisions of the RJA are unquestionably procedural, it does include provisions of substantive law. See, generally, *McDougall v Schanz*, 461 Mich 15; 597 NW2d 148 (1999).[9] Section 6093 in particular cannot be characterized as merely procedural. To begin with, that section constitutes the

---

[9] For example, ch 38 of the RJA establishes the right to a cause of action to abate public nuisances. MCL 600.3801 *et seq.*; MSA 27A.3801 *et seq.* Similarly, ch 43 of the RJA establishes both the power to issue, and the right to request, a writ of habeas corpus. MCL 600.4301 *et seq.*; MSA 27A.4301 *et seq.* Indeed, the title of the RJA refers to such things as "the organization and jurisdiction of the courts," court "powers and duties," and "the forms and attributes of civil claims and actions," all of which can refer to substantive rights. See *Kingsley Associates, Inc v Moll PlastiCrafters, Inc*, 65 F3d 498, 507-508 (CA 6, 1995).

only authority for judgment tax levies. If § 6093 is not viewed as substantively authorizing a judgment tax, then such taxes could never be levied. Second, when originally enacted, the judgment tax provisions now found in RJA, § 6093 were in a separate statute. 1887 PA 312. That was years before the provision was included in the first Judicature Act, and long before it was placed in the RJA. The provision hardly loses its substantive character because it was readopted as part of a codification.

V

The Court of Appeals also found imposition of the judgment levy to violate Hamtramck's charter taxation limitation. MCL 117.5(a); MSA 5.2084(a) provides that a city shall not have the power:

> To increase the rate of taxation now fixed by law, unless the authority to do so is given by a majority of the electors of the city voting at the election at which the proposition is submitted, but the increase in any case shall not be such as to cause the rate to exceed 2%, except as provided by law, of the assessed value of the real and personal property in the city.

The Hamtramck City Charter incorporates that limitation. Hamtramck City Charter, ch XVIII, §§ 4, 23.

However, we agree with the defendant that cases such as *Hazel Park v Municipal Finance Comm*, *supra*, and *Simonton v Pontiac*, 268 Mich 11; 255 NW 608 (1934), make clear that the specific provisions of § 6093 control over the otherwise applicable limitations of the home rule cities act. Even the Court of Appeals acknowledged that " 'every municipal charter

is subject to the Constitution and general laws of this State.'" 227 Mich App 146, quoting *Hazel Park v Municipal Finance Comm*, 317 Mich 599. Indeed, *Simonton* dealt with a similar situation, finding that the predecessor statute to RJA, § 6093 "'provide[d] for the payment of judgments, exclusive of the limitations to taxation established by municipal charters.'" 268 Mich 21. The constitution in effect at the time of *Simonton* and *Hazel Park* provided that municipal charges are "subject to the Constitution and general laws of this state." Const 1908, art 8, § 21. The current constitution has almost identical language. Const 1963, art 7, § 22. The home rule cities act specifically provides that each city charter shall limit taxes, "except as otherwise provided by law . . . ." MCL 117.3(g); MSA 5.2073(g).[10]

The Court of Appeals took the position that because the Headlee Amendment limited the Legislature's power to amend existing charters to increase tax limits beyond those existing at the time of ratification, it must follow that RJA, § 6093 can no longer be read to authorize a judgment tax levy in excess of existing limits. However, the flaw in that reasoning is that the Headlee Amendment's limitation is on the

---

[10]   Each city charter shall provide:

For annually laying and collecting taxes in a sum, except as otherwise provided by law, not to exceed 2% of the assessed value of the real and personal property in the city. Unless the charter provides for a different tax rate limitation, the governing body of a city may levy and collect taxes for municipal purposes in a sum not to exceed 1% of the assessed value of the real and personal property in the city, subject to section 1a of chapter 7 of the municipal finance act, Act No. 202 of the Public Acts of 1943, as amended, being section 137.1a of the Michigan Compiled Laws.

Legislature's ability to enact new legislation to amend existing charters. Section 6093 does not do so. It is legislation that long preceded the Headlee Amendment and, by both its terms and judicial precedent, authorized the imposition of a tax rate necessary to pay the judgment even if the effect is to raise tax rates above otherwise applicable limits.

VI

We conclude that the city's levy under § 6093 to pay the judgment did not constitute a violation of the Headlee Amendment or of the home rule cities act and the Hamtramck City Charter. Accordingly, the judgment of the Court of Appeals and the order of the Michigan Tax Tribunal are reversed.

CAVANAGH, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.

CORRIGAN, J. (*concurring*). I join parts I through IV of the majority opinion. I concur in the result reached in part V, but write separately because I disagree with the majority's construction of MCL 117.3(g); MSA 5.2073(g) and MCL 117.5(a); MSA 5.2084(a). I would construe those provisions as allowing a home rule city to raise tax rates above the charter limitation only when the Legislature has expressed its intent that a specific tax fall outside the limitation. Because the language of the judgment levy statute, MCL 600.6093(1); MSA 27A.6093(1), evinces the requisite intent, I concur in the result reached by the majority.

I. STATUTORY CONSTRUCTION

A

The question in this case is whether the judgment levy tax violated the municipal tax limitations established by the home rule cities act, MCL 117.1 *et seq.*; MSA 5.2071 *et seq.*, and the Hamtramck Charter.[1] The

---

[1] In *Hammond v Place*, 116 Mich 628; 74 NW 1002 (1898), this Court considered whether a municipality was required to assess taxes under the predecessor of the current judgment levy statute, 1897 CL 10482, when the assessment would increase total taxes beyond the rate allowed by charter. This Court held that the statute provided for payment of judgments "exclusive of the limitations to taxation established by municipal charters." *Id.* at 632. In so concluding, this Court observed that because the Constitution of 1850 imposed no limit on taxation by municipalities, the Legislature possessed the power to limit taxation. *Hammond*, however, does not control this case because of changes in our constitution and the enacting of the home rule cities act, MCL 117.1 *et seq.*; MSA 5.2071 *et seq.*

The Legislature enacted the home rule cities act in response to Const 1908, art 8, §§ 20, 21, which provided:

The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts. [*Id.*, § 20.]

Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this state. [*Id.*, § 21.]

Const 1963, art 7, §§ 21, 22, are similar to the provisions of the Constitution of 1908. They provide:

The legislature shall provide by general laws for the incorporation of cities and villages. Such laws shall limit their rate of ad valorem property taxation for municipal purposes, and restrict the powers of cities and villages to borrow money and contract debts.

Hamtramck Charter includes provisions that incorporate MCL 117.3(g); MSA 5.2073(g) and MCL 117.5(a); MSA 5.2084(a). MCL 117.3(g); MSA 5.2073(g) directs that a charter shall provide:

> For annually laying and collecting taxes in a sum, except as otherwise provided by law, not to exceed 2% of the assessed value of the real and personal property in the city. Unless the charter provides for a different tax rate limitation, the governing body of a city may levy and collect taxes for municipal purposes in a sum not to exceed 1% of the assessed value of the real and personal property in the city,

Each city and village is granted power to levy other taxes for public purposes, subject to limitations and prohibitions provided by this constitution or by law. [*Id.*, § 21.]

> Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section. [*Id.*, § 22.]

In *Detroit v Walker*, 445 Mich 682, 690; 520 NW2d 135 (1994), this Court explained the development of these constitutional provisions:

> Our municipal governance system has matured to one of general grant of rights and powers, subject only to certain enumerated restrictions instead of the earlier method of granting enumerated rights and powers definitely specified. The convention comment to the most recent amendment of the Michigan Constitution announces best the current relationship between municipalities and the state. It provides that "a revision of Sec 21, Article VII, of the present [1908] constitution *reflects Michigan's successful experience with home rule.*"

The home rule cities act, however, includes limitations on a city's power to tax. It also provides that "[n]o provision of any city charter shall conflict with or contravene the provisions of any general law of the state." MCL 117.36; MSA 5.2116.

subject to section 1a of chapter 7 of the [Municipal Finance Act, MCL 137.1a; MSA 5.3188(45a)].

This limitation applies only to ad valorem taxation. *Dooley v Detroit*, 370 Mich 194, 215; 121 NW2d 724 (1963).

MCL 117.5(a); MSA 5.2084(a) provides that a city does not have the power:

> To increase the rate of taxation now fixed by law, unless the authority to do so is given by a majority of the electors of the city voting at the election at which the proposition is submitted, but the increase in any case shall not be such as to cause the rate to exceed 2%, except as provided by law, of the assessed value of the real and personal property in the city.

The majority essentially reasons that the judgment levy tax falls within the exception to the charter limitation because it is a tax "provided by law" for purposes of MCL 117.3(g); MSA 5.2073(g). I agree that MCL 117.3(g); MSA 5.2073(g) is controlling,[2] but disagree with the majority's construction of the statutory language. I would construe the provision as allowing a city to raise tax rates above the charter limitation only where the Legislature has expressed its intent that a specific tax fall outside the limitation.

---

[2] The voting provision, MCL 117.5(a); MSA 5.2084(a), limits the power of the city to increase the "rate of taxation now fixed by law" unless voters grant it the authority to do so. MCL 117.3(g); MSA 5.2073(g) governs the rate of taxation and contains an exception to the tax limitation when the Legislature so provides by law. MCL 117.5(a); MSA 5.2084(a) recognizes this restriction by providing that any increase authorized by voters may not cause the tax rate to exceed two percent, "except as provided by law." Thus, construing the provisions together, the city need not obtain voter approval to increase the rate of taxation beyond the charter limit if the Legislature directs that the tax is in addition to other taxes collected by the city.

In construing a statute, this Court begins with an examination of its language. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). We read the statutory language in context to determine whether ambiguity exists. *Id.* at 237; see *Consumers Power Co v Public Service Comm*, 460 Mich 148, 163, n 10; 596 NW2d 126 (1999). If the language is unambiguous, we enforce the statute as written. 460 Mich 236. Where ambiguity exists, this Court seeks to effectuate the intent of the Legislature through a reasonable construction, considering the purpose of the statute and the object sought to be accomplished. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). Further, under Const 1963, art 7, § 34, this Court must "liberally" construe constitutional provisions and laws concerning counties, townships, cities, and villages in their favor.

The Legislature amended the home rule cities act to add "except as otherwise provided by law" in 1973. 1973 PA 81. The statute directs that the charter must provide for laying and collecting taxes "in a sum, except as otherwise provided by law, not to exceed 2% . . . ." MCL 117.3(g); MSA 5.2073(g) concerns the maximum tax rate, not the purpose for which the tax is levied. Indeed, MCL 117.3(f); MSA 5.2073(f) squarely addresses those purposes, providing that "the subjects of taxation for municipal purposes be the same as for state, county, and school purposes under the general law."[3] Thus, when read in context, the phrase "otherwise provided by law" in MCL

---

[3] Const 1963, art 7, § 21 grants cities and villages the "power to levy other taxes for public purposes, subject to limitations and prohibitions provided by this constitution or by law."

117.3(g); MSA 5.2073(g) is not the equivalent of the "authorized by law" language in the Headlee Amendment, but rather references whether the Legislature has specifically excepted a tax from the maximum rate. Accordingly, I would construe the statutory language as requiring some expression of legislative intent that a specific tax fall outside the charter limit before the city may exceed the charter limitation.

B

An examination of statutes granting a city authority to levy specific taxes supports this construction of MCL 117.3(g); MSA 5.2073(g). The Legislature has demonstrated in those statutes that it will explicitly provide that a tax is not subject to charter and statutory limitations when it intends that those limitations not apply.

For example, MCL 123.261; MSA 5.2681 authorizes a 3 mill tax for garbage services and provides that the tax "shall be in addition to the amount authorized to be levied for general purposes by the general law or special charter under which the city or village is incorporated." Similarly, MCL 397.201(2); MSA 15.1661(2) authorizes a one-mill tax for a public library and provides that the tax levied "shall be in addition to any tax limitation imposed by a city charter." The Legislature has also authorized a tax to fund pensions for police and firefighters, MCL 38.559(2); MSA 5.3375(9)(2), and provided that, except in municipalities subject to the fifteen-mill limitation under the constitution, the amount required by taxation to meet appropriations "shall be in addition to any tax limitation imposed upon tax rates in those municipalities

by charter provisions or by state law," subject to Const 1963, art 9, § 25.

By contrast, the Legislature has not exempted other specific taxes from the charter limitation. MCL 400.576; MSA 5.3439(6) authorizes a one-mill levy for services to older citizens, but provides that the city must submit the millage proposition to the electorate. Similarly, MCL 123.861 *et seq.*; MSA 5.3391 *et seq.* authorizes a city of less than 50,000 inhabitants to levy a tax not exceeding two mills for the maintenance of a band, but requires voter approval. Thus, a comparison of these statutes authorizing the levy of a property tax for a specific purpose reveals that the Legislature will expressly provide that a tax falls outside charter and statutory limitations if it intends to grant cities that authority.

C

This construction also comports with the Attorney General's construction of MCL 117.3(g); MSA 5.2073(g) before the 1973 amendment. Although this Court is not bound by Attorney General opinions, *Frey v Dep't of Management & Budget*, 429 Mich 315, 338; 414 NW2d 873 (1987), they can be persuasive and provide insight into the historical development of a statute that may aid in construing ambiguous language. *Indenbaum v Michigan Bd of Medicine (After Remand)*, 213 Mich App 263, 274; 539 NW2d 574 (1995).

In OAG, 1925-1926, p 102 (April 23, 1925), the Attorney General considered whether a home rule city could levy two mills for the support of a municipal band under MCL 123.861 *et seq.*; MSA 5.3391 *et*

*seq.,* in addition to the full two percent authorized by charter. At the time the Attorney General issued his opinion, the home rule cites act contained the voting requirement, § 5(a), but not the tax limitation now contained in § 3(g). 1909 PA 279. The Attorney General opined that the city did not have the authority to raise more than a total of two percent, including the amount raised for the band, because the Legislature merely permitted municipalities to raise money for a band—a purpose for which they were not authorized to tax before enacting of the statute.

The Attorney General next considered the question in OAG, 1945-1946, No O-3867, p 444 (August 29, 1945). He opined that a home rule city could exceed the charter limitation by levying up to two mills[4] to fund garbage or disposal systems under MCL 123.261; MSA 5.2681, but could not exceed the limitation for the purpose of maintaining a band. The Attorney General recognized that the Legislature had added § 3(g) to the list of provisions required in a charter, 1929 PA 126,[5] but concluded that the garbage collection act did not conflict with the amendment:

> It is our opinion that the garbage collection act is in no way in conflict with the later amendment to the Home Rule Act, which simply makes it mandatory on Home Rule cities to provide for laying taxes within 2% of the assessed valuation. The Legislature must be presumed to have been aware of the general provision in the garbage collection act by which all cities must, if they desire a garbage collection sys-

---

[4] The Legislature increased the amount of the tax to three mills in 1975. 1975 PA 38.

[5] 1929 PA 126, § 3(g), required that the charter shall provide "[f]or annually laying and collecting taxes in a sum not to exceed two per centum of the assessed value of all real and personal property in the city . . . ."

tem, levy a tax over and above any charter rate limit. It is our opinion, therefore, that the City of Ironwood may levy not to exceed two mills beyond the charter rate limit of 2% for this purpose. [OAG, 1945-1946, p 445.]

The Attorney General, however, once again opined that the city could not exceed the limitation for purposes of maintaining a band because the Legislature did not grant it that authority.

In OAG, 1949-1950, No 1049, p 353 (September 16, 1949), the Attorney General concluded that MCL 211.107a; MSA 7.161(1)[6] did not repeal the garbage tax act or the police and firefighters' pension and retirement fund act, MCL 38.559(2); MSA 5.3375(9)(2). The Attorney General further opined that a city could exceed the two percent limitation under MCL 211.107a; MSA 7.161(1) in levying the tax under both acts.

Thus, before the 1973 amendment, the Attorney General consistently construed the statute to require an expression of legislative intent that the specific tax fall outside the charter limit. The Legislature's insertion of the phrase "except as otherwise provided by law" in the first sentence of the provision of the home

---

[6] MCL 211.107a; MSA 7.161(1) provides:

No city shall have power to increase the rate of taxation now fixed by law, unless the authority to do so shall be given by a majority of the electors of said city voting at the election at which said proposition shall be submitted, but the increase in any case shall not be such as to cause such rate to exceed 2 per centum of the assessed value of the real and personal property in such city: Provided, That no tax rate of any city shall be fixed which will reduce the combined taxing power of the county, state, school district, metropolitan district, and port district, or any combination of these units, over any parcel of property, below 15 mills per dollar of assessed valuation, except as provided in [MCL 211.211; MSA 7.71].

rule cities act concerning the maximum tax rate, MCL 117.3(g); MSA 5.2073(g), essentially codified the Attorney General's construction.[7] The plain language of the statute now requires some expression of legislative intent that the specific tax fall outside the charter limit before the city may exceed the charter limitation.

D

This Court's decisions do not support the majority's construction of the statute. The majority erroneously relies on *Simonton v Pontiac*, 268 Mich 11; 255 NW 608 (1934), and *Hazel Park v Municipal Finance Comm*, 317 Mich 582; 27 NW2d 106 (1947), for the proposition that the judgment levy statute controls over the otherwise applicable limitations of the home rule cities act. First, *Simonton* and *Hazel Park* were decided before the Legislature amended MCL 117.3(g); MSA 5.2073(g) to include the "except as otherwise provided by law" language. Second, those cases did not involve the judgment levy statute, but rather a bond statute that expressly provided that no limitation in any statute or charter would prevent the levy and collection of the full amount necessary to service the debt, 1929 CL 2694.[8]

---

[7] More recently, in OAG, 1997-1998, No 6998, pp 193, 194 (October 29, 1998), the Attorney General opined that "a city may not, in the absence of specific statutory authority, levy a property tax millage in excess of the millage limitations imposed by its city charter or by the Home Rule Cities Act." The Attorney General determined that a city could not levy a property tax in excess of the millage limitations for the purpose of demolishing abandoned buildings because the Legislature has not authorized the levy of a tax for that purpose.

[8] In 1943, the Legislature repealed the bond statute involved in *Simonton* and *Hazel Park* (1925 PA 273) and enacted the Municipal Finance Act, MCL 131.1 *et seq.*; MSA 5.3188(1) *et seq.* That act provides that bonds

*Simonton* relied on the general principles stated in *Hammond v Place*, 116 Mich 628; 74 NW 1002 (1898), in considering whether a city was required to include an assessment in its tax levy to cover bond debt under 1929 CL 2694, when to do so would increase the amount of taxation beyond the limit set by charter. This Court observed that under Const 1908, art 8, §§ 20, 21, the charter was subject to the constitution and the general laws of the state. It reasoned that the Legislature enacted the bond statute under that reserved power and specifically provided that no limitation in statute or charter shall prevent the levy and collection of the amount necessary to service the debt.

This Court further concluded that the fifteen-mill limitation on taxes contained in Const 1908, art 10, § 21 did not apply to home rule cities. Rejecting the city's reliance on §§ 5(a) and 3(g) of the home rule cities act, this Court explained that home rule cities were subject to the general laws: "In *Harsha v City of Detroit*, 261 Mich 586 [246 NW 849 (1933)], we held that the legislature might modify the charters of municipal corporations at will and that the State still retained authority to amend charters and enlarge and diminish their powers." *Simonton, supra* at 20.

---

which qualify as obligations under the act are subject to the limitations and conditions of the act "in addition to the requirements of such charter or law . . . ." MCL 135.2; MSA 5.3188(22). Regarding the refunding of outstanding indebtedness, MCL 136.4; MSA 5.3188(31) provides:

> The refunding obligations and the tax levies therefor shall not be deemed to be within any statutory or charter limitation of tax rate or of bonded indebtedness, but shall be deemed to be authorized in addition thereto. However, no obligations except refunding obligations shall be issued which would cause the total debt to exceed any such limitation.

In *Hazel Park, supra* at 598-599, this Court discussed the statutory provision that no limitation in any charter or statute shall prevent the levy in clarifying its comment in *Simonton* that the fifteen-mill limitation in Const 1908, art 10, § 21 did not apply to home rule cities:

> We do not overlook the fact that in the instant case, by an amendment to the charter of the plaintiff city, the maximum of taxes for city purposes in any one year was increased to 1.8 per cent. (instead of the constitutional limit of 1.5 per cent.) on the assessed valuation of the property in the city. But we also assume that under that limitation, if these bonds be issued and sold, the result will be that the city will not be able to pay the principal and interest thereon and in addition raise sufficient money by taxation to defray the necessary municipal expenses, unless the annual tax rate should exceed 1.8 per cent. Under such circumstances the charter limit of 1.8 per cent. does not control, inasmuch as every municipal charter is subject to the Constitution and general laws of this State. The municipal finance act . . . is a general law of the State, and applies here. It provides that no limitation in any statute or charter shall prevent the levy and collection of the full amount of taxes required to pay the bond issue which has been approved by the electors of Hazel Park and the municipal finance commission.

This Court concluded:

> The provision in the municipal finance act, *supra*, that no limitation in any statute or charter shall prevent the levy and collection of the full amount of taxes to pay the bond issue, must be read into plaintiff's charter, and controls the instant case notwithstanding the 1.8 per cent. tax limitation in the charter. [*Id.* at 606.]

In *Bullinger v Gremore*, 343 Mich 516; 72 NW2d 777 (1955), this Court similarly focused on a statutory

provision that evinced the Legislature's intent that taxes by member municipalities to fund a hospital authority under the hospital authority act, MCL 331.1 *et seq.*; MSA 5.2456(1) *et seq.*, were in addition to charter or statutory limitations. This Court reasoned:

> Insofar as legislative intent is concerned, the answer to this question is indicated by the declaration in section 1 of the hospital authority act that:
>
> "The power herein granted shall be deemed an enlargement of any power granted to cities, incorporated villages and townships by their respective charters or the laws of the State."
>
> As pointed out in *City of Ecorse v Peoples Community Hospital Authority* [336 Mich 490; 58 NW2d 159 (1953)], an authority created pursuant to this statute is a State agency. It is invested with functions concerning the health of the people of the State. With reference to the performance of such functions the legislature has a broad measure of control. *Harsha v City of Detroit, supra.*
>
> In *City of Hazel Park v Municipal Finance Commission, supra,* the Court quoted with approval from the *Harsha Case,* discussing at some length the power of the legislature with reference to municipal charters and taxation. A repetition of what was said in these decisions would serve no useful purpose. The levy of taxes expressly authorized by the hospital authority act of 1945, as amended, to enable the members of a hospital authority to meet the obligations imposed on them thereunder is not subject to charter or statutory limitations as to tax rates, other than as provided in said act, but the power so given is in addition to taxing authority otherwise granted. [*Id.* at 553-554.]

Contrary to the majority's conclusion, this Court did not determine before the 1973 amendment of the home rule cities act that the mere authority to levy a tax for a specific purpose authorizes the city to exceed charter and statutory limitations. Rather,

*Simonton, Hazel Park,* and *Bullinger* reveal that this Court examined the provisions of the particular statute for an expression of legislative intent that the tax fall outside the otherwise applicable limitations. Accordingly, the majority's conclusion is contrary to both the plain language of MCL 117.3(g); MSA 5.2073(g), as well as this Court's construction of the statute before the 1973 amendment.

## II. APPLICATION

In this case, I conclude that the judgment levy statute, MCL 600.6093(1); MSA 27A.6093(1), contains the requisite expression of legislative intent that the tax fall outside the charter limit. It provides, in part:

> Whenever judgment is recovered against any township, village, or city, or against the trustees or common council, or officers thereof, in any action prosecuted by or against them in their name of office, the clerk of the court shall, on the application of the party in whose favor judgment is rendered, his attorney, executor, administrator, or assigns, make and deliver to the party so applying a certified transcript of the judgment, showing the amount and date thereof, with the rate of interest thereon, and of the costs as taxed under the seal of the court, if in a court having a seal. The party obtaining the certified transcript may file it with the supervisor of the township, if the judgment is against the township, or with the assessing officer or officers of the city or village, if the judgment is against a city or village. *The supervisor or assessing officer* receiving the certified transcript or transcripts of judgment *shall proceed to assess the amount thereof with the costs and interests from the date of rendition of judgment to the time when the warrant for the collection thereof will expire upon the taxable property of the township, city, or village upon the then next tax roll of such township, city, or village,* without any other or further certificate than the certi-

fied transcript as a part of the township, city, or village tax, *adding the total amount of the judgment to the other township, city, or village taxes and assessing it in the same column with the general township, city, or village tax.* [MCL 600.6093(1); MSA 27A.6093(1) (emphasis added).]

The statute directs that the assessing officer shall "*add*[] the total amount of the judgment to the *other* . . . city . . . taxes . . . ." *Id.* The Legislature's use of the verb "add" reflects its intent that the city levy a tax in a sum that will both satisfy the judgment and finance its other expenses. Accordingly, the assessment under the judgment levy statute falls outside the tax limitation under the Hamtramck Charter and MCL 117.3(g);  MSA 5.2073(g).

### III. CONCLUSION

I construe MCL 117.3(g); MSA 5.2073(g) and MCL 117.5(a); MSA 5.2084(a) to allow a home rule city to raise tax rates above the charter limitation only when the Legislature has expressed its intent that a specific tax fall outside the limitation. The language of the judgment levy statute, MCL 600.6093(1); MSA 27A.6093(1), contains the requisite expression of legislative intent. Therefore, I join parts I through IV of the majority opinion and concur in the result reached in part V.

WEAVER, C.J., concurred with CORRIGAN, J.