*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THEODORE CADWELL, and GLENN QUAKER,

Plaintiffs-Appellants,

v

CITY OF HIGHLAND PARK,

Defendant-Appellee.

UNPUBLISHED
February 19, 2019

Nos. 341026; 341284
Wayne Circuit Court
LC No. 10-012583-NO

Before: CAVANAGH, P.J., and BORRELLO and REDFORD, JJ.

PER CURIAM.

These consolidated appeals arise out of the same lawsuit involving claims under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*. In Docket No. 341026, plaintiffs appeal by leave granted[1] the trial court's October 19, 2017 order setting the amount of judgment and interest to be paid, denying plaintiffs' motion for immediate payment of the judgment and interest, ordering defendant to make payments on the judgment as tax revenues for payment of the judgment are received, and denying plaintiffs' motion to show cause why defendant should not be held in contempt. In Docket No. 341284, plaintiffs appeal as of right the trial court's November 14, 2017 order denying plaintiffs' second motion for attorney fees. This Court, on its own motion, consolidated plaintiffs' appeals in Docket Nos. 341026 and 341284.[2] For the reasons set forth in this opinion, we affirm in part, reverse in part, and remand this matter for further proceedings consistent with this opinion.

## I. BACKGROUND

---

[1] *Cadwell v Highland Park*, unpublished order of the Court of Appeals, entered April 20, 2018 (Docket No. 341026).

[2] *Id*.

These consolidated appeals present another installment in protracted appellate litigation between these parties following a jury verdict in plaintiffs' favor.[3] Defendant previously appealed the judgment that followed the jury trial; this Court reversed in part in an unpublished opinion, determining that remittitur was appropriate because the jury's award of $500,000 to each plaintiff for emotional distress was not supported by the evidence. *Cadwell v Highland Park*, unpublished per curiam opinion of the Court of Appeals, issued May 28, 2015 (Docket No. 318430), pp 1, 6-7 (*Cadwell I*). This Court affirmed in all other respects. *Id.* at 7.

On remand, the trial court entered a remittitur judgment against defendant on May 4, 2016, in the amount of $521,360, plus costs and attorney fees. The remittitur judgment further ordered that the judgment, costs, and attorney fees would be subject to the applicable statutory interest rate under MCL 600.6013(8).

Following entry of the remittitur judgment, plaintiffs attempted to collect on the judgment and a dispute developed between the parties regarding the method for calculating the statutory interest on the judgment.

On January 23, 2017, the trial court entered an order adopting the interest calculation submitted by plaintiffs as the proper calculation. However, on March 20, 2017, this Court entered an order peremptorily reversing the trial court's January 23, 2017 order, explaining in pertinent part as follows:

> Pursuant to MCR 7.205(E)(2), the Wayne Circuit Court's January 23, 2017 order is REVERSED because the circuit court failed to properly calculate the interest owed on the judgment under MCL 600.6013(8) consistent with this Court's holding in *Chelsea Investment Group, LLC v City of Chelsea*, 288 Mich App 239, 256-260; 792 NW2d 781 (2010). As *Chelsea* instructs,
>
> > MCL 600.6013(8) simply requires that interest on a judgment be recalculated every six months from the date of the filing of the complaint using the interest rates announced on July 1 or January 1, whichever is "immediately preceding" the complaint's six-month calculation date. For example, interest for a complaint filed in August 2008 would be calculated in February 2009 using the January 1, 2009, rate, and would be calculated again in August 2009, using the July 1, 2009, rate. . . .
>
> Accordingly, we REMAND this case for a recalculation of the interest due consistent with *Chelsea*.[4]

---

[3] The underlying facts of plaintiffs' claims on which this action is based are not at issue in the instant appeal.

[4] *Cadwell v Highland Park*, unpublished order of the Court of Appeals, entered March 20, 2017 (Docket No. 336969).

-2-

On March 22, 2017, plaintiffs moved in the trial court for additional attorney fees and costs, asserting that the attorney fees included in the remittitur judgment related only to pretrial and trial matters and that plaintiffs were further entitled under the WPA to reasonable attorney fees for matters related to "post-appeals and collection of the Court's Remittitur Judgment."

On March 24, 2017, defendant moved the trial court to correct the calculation of interest on the judgment in accordance with this Court's March 20, 2017 remand order. Defendant argued that its method of calculation was correct and should be adopted by the trial court. Plaintiffs opposed the motion. Plaintiffs argued that defendant's calculations were incorrect and also requested that the balance of the amount due on the judgment be paid immediately.

On March 30, 2017, plaintiffs moved the trial court for an order compelling defendant to pay the remittitur judgment in full immediately. In their motion, plaintiffs noted that the trial court's August 29, 2016 order granting a second writ of mandamus had required defendants to pay the judgment balance by November 30, 2016. Plaintiffs argued that defendants had continued to refuse to make timely payments on the judgment, despite the trial court's orders. Plaintiffs further argued that MCL 600.6093 required the judgment to be immediately paid in full in the instant case because the statute instructs any city to pay a judgment against it "on or before the date when the tax roll and warrant shall be returnable" and that date had already passed in this case. Defendant opposed the motion, arguing that it had complied with the trial court's orders by placing the judgment amount on its tax rolls and distributing the amounts it had collected to plaintiffs. Defendant maintained that it was following the statutory requirements of MCL 600.6093.

The trial court held a hearing on April 7, 2017, to address the pending motions. First, with respect to plaintiffs' motion to compel immediate payment of the remittitur judgment, the parties indicated that they had agreed to adjourn the motion to allow defendant to submit a partial payment along with a payment plan for the remaining unpaid balance to plaintiffs by April 28, 2017. Additionally, the trial court granted plaintiffs' motion for additional attorney fees and costs under the WPA, awarding plaintiffs $29,760. Finally, with respect to the calculation-of-interest issue, the trial court granted the motion in part but ordered defendant to make further recalculations. These rulings were memorialized in orders entered on April 21, 2017. Defendant appealed the trial court's award of additional attorney fees.[5]

Meanwhile, as defendant pursued appellate relief on the issue of the additional attorney fees, the parties continued to litigate in the trial court how to calculate the interest on the remitter judgment. During this time, the trial court held multiple hearings and accepted multiple submissions by the parties addressing their respective proposed interest calculations. Plaintiffs also renewed their motion to compel immediate payment and argued that defendant should be held in contempt for failing to pay the remittitur judgment in full in violation of the trial court's August 29, 2016 order granting a second writ of mandamus.

---

[5] This appeal was separate from the instant appellate proceedings. As will be discussed later in this opinion, this appeal resulted in a published decision from this Court. *Cadwell v Highland Park*, 324 Mich App 642; ___ NW2d ___ (2018) (*Cadwell II*).

On October 19, 2017, the trial court entered an order setting judgment and interest, dismissing the show cause motion, and denying plaintiffs' motion for immediate payment of judgment and interest. In the order, the trial court adopted defendant's interest calculations.

Plaintiffs subsequently filed a separate motion seeking a second award of additional postjudgment attorney fees and costs based on attorney fees and costs incurred to collect on the remittitur judgment since April 4, 2017. Plaintiffs explained that the previous award of additional postjudgment attorney fees only covered the period from May 28, 2015 through March 5, 2017. Plaintiffs maintained that they were entitled under the WPA to recover these postjudgment attorney fees.

At the November 10, 2017 hearing on this motion, the trial court denied plaintiffs' motion with prejudice, reasoning as follows:

> Okay. The bottom line is this matter is pending in the Court of Appeals.[6] I'm not going to award any additional costs at this juncture. Additionally, the Court feels that this is subsequent judgment activity. That it's not relevant and pertinent to this Whistleblower's Act, other than what the Court has previously awarded. So, I'm denying a request at this point in time.

The trial court entered an order on November 14, 2017, stating that plaintiffs' second motion for attorney fees was denied for the reasons stated on the record.

Plaintiffs appealed as of right the trial court's November 14, 2017 order denying plaintiffs' second motion for additional attorney fees. Additionally, as previously noted, this Court granted plaintiffs' application for leave to appeal the trial court's October 19, 2017 order and consolidated these two appeals.

Subsequently, on June 19, 2018, this Court issued a published opinion addressing defendant's appeal of the trial court's April 21, 2017 ruling awarding plaintiffs additional attorney fees of $29,760. *Cadwell v Highland Park*, 324 Mich App 642, 645, 647-649; ___ NW2d ___ (2018) (*Cadwell II*). In this Court, defendant argued "that the WPA only permits the trial court to award attorney fees in connection with work leading up to the moment that a judgment is entered and that it does not allow a court to award any attorney fees for post judgment legal proceedings." *Id*. at 650. This Court held that pursuant to MCL 15.364, postjudgment attorney fees were recoverable by a prevailing plaintiff in an action under the WPA. *Id*. at 645. However, this Court nonetheless vacated the trial court's order awarding postjudgment attorney fees and remanded the matter for further consideration because the trial court "failed to properly evaluate whether the requested attorney fees were reasonable and appropriate." *Id*. at 645, 656-658. This Court specifically noted that the trial court did not rely on any evidence to determine that the hourly rate it applied was the appropriate market rate; that the trial court improperly considered the irrelevant factor of defendant's apparent inability to pay

---

[6] This appears to be a reference to defendant's appeal of the trial court's April 21, 2017 award of additional attorney fees.

more in attorney fees in light of its financial situation; and that the trial court failed to briefly discuss each of the factors set forth in *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 281; 884 NW2d 257 (2016), for determining the reasonableness of attorney fees. *Cadwell II*, 324 Mich App at 655-658.

Further facts necessary to the resolution of the issues will be presented below.

## II.  CONSTRUCTION OF MCL 600.6093(1)

In this appeal, plaintiffs first argue that the trial court failed to comply with MCL 600.6093(1) by denying plaintiffs' motion to compel defendant to immediately pay the judgment in full.

This issue presents a question of statutory interpretation, which is reviewed de novo on appeal. *In re Bradley Estate*, 494 Mich 367, 377; 835 NW2d 545 (2013).  "The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent as expressed by the language of the statute." *Braska v Challenge Mfg Co*, 307 Mich App 340, 352; 861 NW2d 289 (2014) (quotation marks and citation omitted).  "If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted; the statute must be enforced as written." *Id*.

Plaintiffs are correct that "[m]unicipal corporations have the same obligation as any person or body corporate to satisfy judgments rendered against them." *Zelenka v Wayne Co Corp Counsel*, 143 Mich App 567, 573; 372 NW2d 356 (1985).  Nonetheless, because defendant is a city, plaintiffs do not have access to all of the methods for collecting on a judgment that might otherwise be available if the judgment were not against a municipality.  For example, a party may ordinarily collect by seeking execution on the judgment, MCL 600.6001, but an execution may not be obtained on a judgment against a township, village, or city, MCL 600.6021(1).  Garnishment also is not available as a means for collecting a judgment against a municipality. *Roosevelt Park v Norton Twp*, 330 Mich 270, 272-274; 47 NW2d 605 (1951); *Payton v Highland Park*, 211 Mich App 510, 513; 536 NW2d 285 (1995).  Our Supreme Court has explained as follows:

> The courts are practically unanimous in holding that the funds or credits of a municipality or other public body exercising governmental functions, acquired by it in its governmental capacity, may not be reached by its creditors by execution under a judgment against the municipality, or by garnishment served upon the debtor or depository of the municipality.
>
> The basis for this rule is that municipal funds constitute a trust fund for the accomplishment of certain municipal functions; that to subject municipal funds to levy of execution and garnishment would restrict, thwart and interfere with the proper and orderly functioning of the municipal governmental machinery; and that to allow an individual municipal creditor to reach municipal funds for the satisfaction of his claim would effect a preference in favor of such creditor to the

prejudice of other creditors and to the ultimate prejudice of the credit of the municipality.

A township is a municipal corporation and as such an instrumentality of the State for purposes of local government. Township funds are in the nature of trust funds and are placed for disposition in accordance with appropriations previously made. Public policy forbids disturbance of these funds as to do so would have a tendency to curtail governmental activities for which these funds were appropriated. [*Roosevelt Park*, 330 Mich at 273 (citations omitted).]

Instead, the "sole remedy" for collecting a judgment against a township, village, or city is provided by MCL 600.6093. *Payton*, 211 Mich App at 511; see also *Roosevelt Park*, 330 Mich at 273 (stating that 1948 CL 624.5, a predecessor statute that was substantively similar to the current version of MCL 600.6093(1), provided "the sole remedy for the collection of a judgment against a township"); *Morley Bros v Carrollton Twp Supervisor*, 312 Mich 607, 614; 20 NW2d 743 (1945) (discussing "the statutory mandate which requires the amount of the judgments to be assessed on the next tax roll, the only means whereby judgments against the township can be collected").[7]

The procedures for collecting on a judgment against a city are set forth in MCL 600.6093(1) as follows:

Whenever judgment is recovered against any township, village, or city, or against the trustees or common council, or officers thereof, in any action prosecuted by or against them in their name of office, the clerk of the court shall, on the application of the party in whose favor judgment is rendered, his attorney, executor, administrator, or assigns, make and deliver to the party so applying a certified transcript of the judgment, showing the amount and date thereof, with the rate of interest thereon, and of the costs as taxed under the seal of the court, if in a court having a seal. The party obtaining the certified transcript may file it with the supervisor of the township, if the judgment is against the township, or with the assessing officer or officers of the city or village, if the judgment is against a city or village. *The supervisor or assessing officer receiving the certified transcript or transcripts of judgment shall proceed to assess the amount thereof with the costs and interests from the date of rendition of judgment to the time when the warrant for the collection thereof will expire upon the taxable property of the township, city, or village upon the then next tax roll of such township, city, or village, without any other or further certificate than the certified transcript as a part of the township, city, or village tax, adding the total amount of the judgment to the other township, city, or village taxes and assessing it in the same column with the general township, city, or village tax.*

---

[7] *Morley Bros* also involved a predecessor statute that was substantively similar to the current version of MCL 600.6093(1). See *Morley Bros*, 312 Mich at 613; 1929 CL 14690.

The supervisor or assessing officer shall set forth in the warrant attached to the tax roll each judgment separately, stating the amount thereof and to whom payable, and *it shall be collected and returned in the same manner as other taxes*. The supervisor or assessing officer, at the time when he delivers the tax roll to the treasurer or collecting officer of any township, city, or village, shall deliver to the township clerk or to the clerk or recording officer of the city or village, a statement in writing under his hand, setting forth in detail and separately the judgment stating the amount with costs and interest as herein provided, and to whom payable. *The treasurer or collecting officer of the township, city, or village, shall collect and pay the judgment to the owner thereof or his attorney, on or before the date when the tax roll and warrant shall be returnable.* In case any supervisor, treasurer, or other assessing or collecting officer neglects or refuses to comply with any of the provisions of this section he shall be guilty of a misdemeanor, and on conviction thereof, shall be punished by a fine of not more than $1,000.00 and costs of prosecution, or imprisonment in the county jail for a period not exceeding 3 months, or by both fine and imprisonment in the discretion of the court. Nothing herein contained shall be construed to exclude other remedies given by law for the enforcement of the judgment.

In sum, as applicable to the question regarding the procedures for obtaining payment on a judgment against a city, MCL 600.6093(1) simply requires the city to assess the amount of the judgment with costs and interests on its tax roll and to then "collect and pay the judgment to the owner thereof or his attorney, on or before the date when the tax roll and warrant shall be returnable." *Id.*

According to plaintiffs, this statutory language mandates that a city must pay the judgment in full by the date "when the tax roll and warrant shall be returnable." As plaintiffs make clear in their appellate brief, their proposed reading of the statute would require a city to pay a judgment against it in full by this firm deadline even if some of the taxes assessed for purposes of satisfying the judgment were not actually collected as a result of those taxes having not been paid. This is clearly an erroneous reading of the statutory requirements that would require a city to use other funds in its possession to meet this obligation.

Contrary to plaintiffs' arguments, MCL 600.6093(1) does not provide a vehicle for plaintiffs to reach the other financial assets of a city, such as defendant, in order to satisfy a judgment; rather, the statute only authorizes the judgment to be collected through taxes assessed for that purpose. The statute provides that after the amount of the judgment has been assessed on the tax roll, the city's treasurer or collecting officer must "*collect and* pay" the judgment "on or before the date when the tax roll and warrant shall be returnable." MCL 600.6093(1) (emphasis added). Under the statute, a city is merely authorized and required to assess taxes in the amount of the judgment (with costs and interest) specifically for the purpose of satisfying the judgment, to collect those taxes, and to use those taxes for their intended purpose of paying the judgment. There is no requirement in the statute that the city must pay to the owner of the judgment any money which has not already been collected from the taxes that were assessed specifically for the purpose of paying the judgment. In other words, a municipality's duty to pay the judgment is not separate from its duty to collect the taxes that were assessed for purposes of paying the judgment. The statute also does not provide that any other municipal funds must be the source of

funds used for satisfying the judgment, nor does the statute require a city to divert other municipal assets toward satisfying the judgment. As previously noted, MCL 600.6093 provides plaintiffs' sole remedy for collecting on the judgment against defendant, *Roosevelt Park*, 330 Mich at 273; *Morley Bros*, 312 Mich at 614; *Payton*, 211 Mich App at 511. Under MCL 600.6093(1), the trial court did not err by denying plaintiffs' motion to require defendant to immediately pay the entire judgment in full without evidence that all of the tax monies assessed for that purpose had been collected.

Nonetheless, plaintiffs further argue in the alternative that the trial court's ruling denying the motion to require immediate payment of the judgment constituted a failure to enforce the trial court's August 29, 2016 order granting a second writ of mandamus, which had required defendant to pay the entire balance of the judgment by November 30, 2016. This is again, an erroneous argument as their argument fails to recognize that a trial court may generally revisit issues it has previously decided while the proceedings remain pending, *Hill v City of Warren*, 276 Mich App 299, 307; 740 NW2d 706 (2007). Moreover, it would have been erroneous to have enforced the order of mandamus with respect to requiring an immediate payment. The requirements for procuring a writ of mandamus are as follows:

> To obtain the extraordinary remedy of a writ of mandamus, the plaintiff must show that (1) the plaintiff has a clear, legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other adequate legal or equitable remedy exists that might achieve the same result. In relation to a request for mandamus, a clear, legal right is one clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided. [*Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016) (quotation marks and citations omitted).]

Hence, for the reasons discussed, defendant did not have a "clear legal duty" under MCL 600.6093(1) to pay the judgment in full by a certain date if the taxes assessed for purposes of satisfying the judgment had not been remitted to defendant, nor did plaintiffs have a clear legal right to such immediate payment. *Id.* Therefore, enforcement of the writ of mandamus would not have been appropriate, and we reject plaintiffs' argument regarding the effect of the second writ of mandamus order.

## III. POSTJUDGMENT ATTORNEY FEES UNDER THE WPA

Next, plaintiffs argue that the trial court erred by denying their second motion for additional attorney fees because the WPA, in MCL 15.364, authorizes a court to award reasonable attorney fees to a plaintiff and the trial court in this case incorrectly believed that plaintiffs' "subsequent judgment activity" on which the attorney fees were based did not relate to their WPA claim.

"[T]he decision to award attorney fees under the WPA is reviewed on appeal for an abuse of discretion." *O'Neill v Home IV Care, Inc*, 249 Mich App 606, 612; 643 NW2d 600 (2002). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Pirgu*, 499 Mich at 274.

"[A]ttorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *Id*. at 274-275 (quotation marks and citation omitted). However, MCL 15.364 permits a court to award a plaintiff in an action under the WPA "reasonable attorney fees" if the court concludes "that the award is appropriate." See also *Cadwell II*, 324 Mich App at 649. Furthermore, MCL 15.363(1) authorizes civil actions for "actual damages" based on alleged violations of the WPA, and MCL 15.363(3) provides that such damages mean "damages for injury or loss caused by each violation of this act, including reasonable attorney fees." This Court held in *Cadwell II* that postjudgment attorney fees were recoverable pursuant to MCL 15.364 by a prevailing plaintiff under the WPA. *Cadwell II*, 324 Mich App at 645. The Court reasoned that a "plaintiff who prevails on a WPA claim but then must engage in postjudgment legal proceedings in order to collect on his or her judgment is still prosecuting an action brought pursuant to the WPA." *Id*. at 652. However, this Court in that prior appeal nonetheless vacated the trial court's order awarding postjudgment attorney fees and remanded the matter for further consideration because the trial court failed to apply the proper legal framework in determining whether the requested attorney fees were reasonable and appropriate. *Id*. at 645, 656-658. Specifically, this Court explained that considering the reasonableness of attorney fees requested by a plaintiff in a WPA action requires a court to apply the following legal framework:

When determining the reasonableness of an attorney fee sought pursuant to a fee-shifting statute,

a trial court must begin its analysis by determining the reasonable hourly rate customarily charged in the locality for similar services. The trial court must then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure.

Thereafter, the trial court must consider *all* of the following "factors to determine whether an up or down adjustment is appropriate":

(1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

(2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

(3) the amount in question and the results obtained,

(4) the expenses incurred,

(5) the nature and length of the professional relationship with the client,

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent.
>
> "In order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors." [*Cadwell II*, 324 Mich App at 655-656, quoting *Pirgu*, 499 Mich at 281-282.]

In the instant appeal involving plaintiffs' second motion for additional attorney fees, the trial court denied the motion solely because it believed that the fees were for "subsequent judgment activity" that was "not relevant and pertinent to this Whistleblower's Act." The mere fact that the fees were incurred for postjudgment activity does not make the attorney fees unrelated to the WPA claim, nor does that fact standing alone prohibit plaintiffs from recovering these attorney fees. *Cadwell II*, 324 Mich App at 645, 652. Accordingly, the trial court erred by denying plaintiffs' motion solely on the basis that the requested fees were incurred for postjudgment activity. *Id*. Furthermore, in denying the motion, the trial court did not make findings related to any of the factors for evaluating the reasonableness of the requested attorney fees; without these findings, this Court cannot adequately review the trial court's decision to deny an award of additional attorney fees. *Id*. at 655-656. Therefore, we reverse the trial court's ruling on this issue and remand this matter for the trial court to evaluate under the proper legal framework the reasonableness of the additional postjudgment attorney fees sought by plaintiffs.[8] On remand, the trial court should properly apply the framework outlined in *Cadwell II* in making this determination.

As defendant notes, this requires the trial court to consider, among other things, the results achieved by plaintiffs. Accordingly, the parties and the trial court should be more discerning in ascertaining which postjudgment activities warrant an award of attorney fees rather than simply treating the matter as an "all or nothing" proposition. Our Supreme Court has explained it has "long recognized that the results obtained are relevant to determining the reasonable value of legal services" and that the "results obtained are indicative of the exercise of skill and judgment on the part of the attorney." *Pirgu*, 499 Mich at 280. "[T]he WPA was enacted to remove barriers to an employee who seeks to report violations of the law, thereby protecting the integrity of the law and the public at large." *Cadwell II*, 324 Mich App at 655 (quotation marks and citations omitted). The WPA's fee-shifting provisions, like other statutory fee-shifting provisions, thus should not be understood to "provide a form of economic relief to improve the financial lot of attorneys or to produce windfalls." See *Smith v Khouri*, 481 Mich 519, 528; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.).

---

[8] In light of this conclusion, plaintiffs' additional arguments challenging the trial court's denial of the second motion for additional attorney fees, which are based on the law-of-the-case and res judicata doctrines, are moot and we decline to address them. "An issue becomes moot when a subsequent event renders it impossible for the appellate court to fashion a remedy." *Kieta v Thomas M Cooley Law Sch*, 290 Mich App 144, 147; 799 NW2d 579 (2010).

IV. CALCULATION OF INTEREST ON THE JUDGMENT

Next, plaintiffs argue that defendant's interest calculations, which were adopted by the trial court, are incorrect because they are inconsistent with MCL 600.6013(8) and this Court's decision in *Chelsea*. Plaintiffs specifically argue that defendant's calculations incorrectly use the January 1, 2011 interest rate of 1.553% for calculating the interest on the first period that begins on October 20, 2010; that the calculations should involve changing to a new interest rate for the first time on January 1, 2011, rather than on April 20, 2011; and that defendant's starting balance for calculating the interest is incorrect because it does not include the trial court's April 21, 2017 award of additional attorney fees in the amount of $29,760.

This issue presents a question of statutory interpretation that is reviewed de novo on appeal. *Ayar v Foodland Distrib*, 472 Mich 713, 715; 698 NW2d 875 (2005). "Clear and unambiguous statutory language is given its plain meaning, and is enforced as written." *Id*. at 716.

The calculation of interest on the judgment in this case is governed by MCL 600.6013(8), which provides in pertinent part as follows:

> [F]or complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action is calculated at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, according to this section. Interest under this subsection is calculated on the entire amount of the money judgment, including attorney fees and other costs.

In *Chelsea*, 288 Mich App at 259, this Court explained that

> MCL 600.6013(8) simply requires that interest on a judgment be recalculated every six months from the date of the filing of the complaint using the interest rates announced on July 1 or January 1, whichever is "immediately preceding" the complaint's six-month calculation date. For example, interest for a complaint filed in August 2008 would be calculated in February 2009 using the January 1, 2009, rate, and would be calculated again in August 2009, using the July 1, 2009, rate.

In this case, plaintiffs first argue that the interest rate calculations adopted by the trial court were inherently flawed because (1) the wrong interest rate was applied to the first six-month period beginning with October 20, 2010; and (2) the calculations did not change to a new interest rate until April 20, 2011, instead of changing the interest rate on January 1, 2011.

It is clear from their arguments that plaintiffs misconstrue the *Chelsea* Court's explanation of how MCL 600.6013(8) operates. First, as this Court made clear in *Chelsea*, the six-month periods are measured by reference to the date on which the complaint was filed. *Chelsea*, 288 Mich App at 259. Next, the "calculation date" occurs *after* six months have transpired. *Id*. ("[I]nterest for a complaint filed in August 2008 would be *calculated in February*

*2009*.") (emphasis added). Finally, the interest rate to apply to a given six-month period is the one announced on the date immediately preceding the calculation date. *Id*. In other words, the applicable interest rate is the one that was announced on the relevant date (either January 1 or July 1 of a given year) that falls between the beginning and ending date of the applicable six-month period and thus occurs during the period itself. *Id*. ("For example, interest for a complaint filed in August 2008 would be calculated in February 2009 using the January 1, 2009, rate, and would be calculated again in August 2009, using the July 1, 2009, rate.").

Thus, in the instant case, the first period begins on October 20, 2010, which is the date the complaint was filed. The first period ends six months later, in April 2011. The applicable interest rate is the rate announced on January 1, 2011, which falls between the beginning date and calculation date of the period. Defendant's interest rate calculations, which the trial court adopted, followed this methodology. Plaintiffs have therefore not demonstrated that the calculations contained an error in the interest rate employed for the initial period or the date on which the applicable interest rate was changed.

Plaintiffs, by maintaining that the July 1, 2010 interest rate should be used to calculate the interest for the first period beginning on October 20, 2010, incorrectly argue that the rate from the date preceding the *beginning date* of the period should be used. As discussed above, this is incorrect. *Id*. Additionally, although new interest rates are announced on January 1 and July 1, the rates to be applied to the calculation of interest rates do not necessarily change on these dates. Rather, as previously discussed, the applicable interest rate changes for purposes of calculating interest under MCL 600.6013(8) on the "calculation date," which occurs in six-month intervals based on the date of the complaint. In this case, that means that the applicable interest rate changes in October and April of each applicable year. Contrary to plaintiffs' understanding, there is no partial first period in order to set the calculation dates to subsequently fall on January 1 and July 1 instead.

Next, plaintiffs argue that the total judgment amount on which the interest is calculated should include the award of additional postjudgment attorney fees. On this issue, plaintiffs are correct.

MCL 600.6013(8) provides that "interest on a money judgment recovered in a civil action is calculated at 6-month intervals *from the date of filing the complaint*," and that "[i]nterest under this subsection is calculated on the entire amount of the money judgment, *including attorney fees and other costs*." In *Ayar*, 472 Mich at 717-718, our Supreme Court held that "under MCL 600.6013(8), judgment interest is applied to attorney fees and costs ordered as mediation sanctions under MCR 2.403(O) from the filing of the complaint against the liable defendant." Although the issue in *Ayar* specifically involved attorney fees and costs ordered as mediation sanctions, the *Ayar* Court's reasoning is directly applicable to the issue in the instant case regarding whether plaintiffs are entitled to judgment interest on additional attorney fees awarded for postjudgment activities. The *Ayar* Court explained that the "statute plainly states that interest on a money judgment is calculated from the date of filing the complaint" and that "the statute makes no exception for attorney fees and costs ordered as mediation sanctions under MCR 2.403(O)." *Id*. at 716-717. Similarly, in this case, there is no exception in MCL 600.6013(8) for attorney fees and costs incurred as part of postjudgment proceedings. Therefore, to the extent plaintiffs are entitled to an award of additional reasonable attorney fees and costs for

postjudgment activities, these fees and costs should be included in the total amount of the money judgment on which interest is calculated from the date the complaint was filed. The trial court erred by ruling at one point that attorney fees awarded for postjudgment activities did not incur interest from the date the complaint was filed.[9]

However, we note that the amount of additional postjudgment attorney fees to which plaintiffs are entitled, if any, has not yet been finally determined. We merely conclude that once this determination is made, all additional attorney fees awarded should be factored into the interest calculation from the date of filing the complaint. Accordingly, we remand this matter for recalculation of the interest on the remittitur judgment consistent with this opinion.

## V. CONTEMPT

Next, plaintiffs argue that the trial court erred by declining to hold defendant in contempt. Our Supreme Court has held that a party may not "seek[] by general appeal to review an order of the trial court refusing to punish for contempt." *Mason v Siegel*, 301 Mich 482, 484-485; 3 NW2d 851 (1942). Therefore, in making this argument, plaintiffs have failed to raise a cognizable issue for our review.

## VI. APPELLATE ATTORNEY FEES

Finally, plaintiffs ask this Court to award them reasonable attorney fees incurred in the instant appeal because an award of appellate attorney fees is authorized under the WPA.

In *Cadwell II*, this Court explicitly stated that "appellate attorney fees are recoverable under MCL 15.364." *Cadwell II*, 324 Mich App at 656 n 3. However, this conclusion does not end the inquiry. MCL 15.364 merely permits "*reasonable* attorney fees." (Emphasis added.) In the context of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*, this Court has previously concluded that although the fee provision in that act permits awarding appellate attorney fees, it was necessary to remand the matter for the trial court to determine in the first instance the reasonableness of the requested appellate attorney fees. *Grow v WA Thomas Co*, 236 Mich App 696, 720; 601 NW2d 426 (1999). A trial court's analysis on remand must consider "all appropriate factors," including the results obtained in the appeal. *Id*. In construing the fee provision of the WPA, it is appropriate to look to caselaw interpreting other similar fee-shifting statutes, such as MCL 37.2802 within the Elliott-Larsen Civil Rights Act. *Cadwell II*, 324 Mich App at 653.

In this case, we conclude that it is necessary to remand this matter for the trial court to determine the reasonableness of plaintiffs' requested appellate attorney fees in the first instance. *Grow*, 236 Mich App at 720. On remand, the trial court should follow the framework outlined in

---

[9] We also note that the interest calculations eventually adopted by the trial court in its October 19, 2017 order did not even include the awarded postjudgment attorney fees of $29,760. Nevertheless, this amount may ultimately be different in light of the proceedings flowing from this Court's decision in *Cadwell II*.

*Cadwell II*, 324 Mich App at 655-656. This analysis includes consideration of the results achieved by plaintiffs on appeal. *Id*. at 656; *Grow*, 236 Mich App at 720. We take this opportunity to point out the very limited success of plaintiffs' results in this appeal. Plaintiffs have obtained a remand for purposes of evaluating the reasonableness of attorney fees they have sought, but we have expressed no opinion on the amount, if any, to which plaintiffs may be entitled. Plaintiffs have also successfully argued that whatever the amount of additional attorney fees that may eventually be awarded, interest will accrue on that amount from the date the complaint was filed as part of the total judgment amount, pursuant to MCL 600.6013(8).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs are awarded. MCR 7.219(A).


/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello
/s/ James Robert Redford