*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEVIN ANDROSIAN, VIRGINIA ANDROSIAN, and All Others Similarly Situated

      Plaintiffs-Appellants,

v

CITY OF TAYLOR,

      Defendant-Appellee.

UNPUBLISHED
March 11, 2025
11:00 AM

No. 366521
Wayne Circuit Court
LC No. 22-007507-CZ

---

JOHN O'DONNELL, COLLEEN O'DONNELL, and All Others Similarly Situated,

      Plaintiffs-Appellants,

v

CITY OF SOUTHGATE,

      Defendant-Appellee.

No. 366886
Wayne Circuit Court
LC No. 22-007854-CZ

---

WESTLAND RETAIL CENTER, LLC,

      Plaintiff,

and

RICKEY WATTS, SUSAN WATTS, and All Others Similarly Situated,

      Plaintiffs-Appellants,

v

No. 367808
Wayne Circuit Court

-1-

CITY OF WESTLAND,                                         LC No.   22-006933-CZ

        Defendant-Appellee.

_____

JOHN LYONS, NATHAN PFEIFER, and All Others
Similarly Situated,

        Plaintiffs-Appellants,

v                                                         No.   367810
                                                          Wayne Circuit Court
CHARTER TOWNSHIP OF REDFORD                               LC No.   22-014150-CZ
MICHIGAN,

        Defendant-Appellee.

_____

Before:  YOUNG, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

In these consolidated appeals,[1] plaintiffs appeal as of right the trial courts' orders granting summary disposition in defendants' favor under MCR 2.116(C)(8) (failure to state claim on which relief can be granted) and (10) (no genuine issue of material fact).  In the trial court, plaintiffs argued that defendants violated the Headlee Amendment by imposing property taxes to cover the cost of healthcare insurance for retired police officers and firefighters.  The trial court disagreed and granted summary disposition in favor of defendants, finding that *Bate v St Clair Shores*, 347 Mich App 771; 16 NW3d 338 (2023), and its companion case, *Ruman v City of Warren*, control here.  We agree with the analysis set forth by the trial court and affirm.

## I.  FACTS, PROCEEDINGS, AND RELEVANT HISTORY

In the late 1930s, before the creation of the 1963 Constitution, the Legislature passed into law Act 345, which according to its preamble is:

> AN ACT to provide for the establishment, maintenance, and administration of a system of pensions and retirements for the benefit of the personnel of fire and police departments employed by cities, villages, or municipalities having full paid members in the departments, and for the spouses and children of the members; to provide for the creation of a board of trustees to manage and operate the system; to authorize appropriations and deductions from salaries; to prescribe penalties and

_____

[1] *Androsian v Taylor*, unpublished order of the Court of Appeals, entered July 16, 2024 (Docket Nos. 366521, 366886, 367808, and 367810).

provide remedies; and to repeal all acts and parts of acts inconsistent therewith. [1937 PA 345, title.]

Within Act 345, MCL 38.551 governs the formation of a municipality's retirement board and MCL 38.552 enumerates the retirement board's duties. MCL 38.556(1) sets forth the "[a]ge and service retirement benefits payable under this act." MCL 38.556(1)(e) provides that a member of a police or firefighter pension plan "shall receive a regular retirement pension payable throughout the member's life" that will be calculated according to a mathematical formula. MCL 38.556(2) provides a death benefit payment to a retiree's surviving spouse and disability benefits to the surviving children of a retiree who dies in the line of duty.

MCL 38.559(2) permits the municipality to impose property taxes for the purpose of financing its obligations under Act 345. This provision states:

> *For the purpose of creating and maintaining a fund for the payment of the pensions and **other benefits payable** as provided in this act*, the municipality, subject to the provisions of this act, *shall appropriate*, at the end of such regular intervals as may be adopted, quarterly, semiannually, or annually, *an amount sufficient to maintain actuarially determined reserves covering pensions payable or that might be payable on account of service performed and to be performed by active members, and pensions being paid to retired members and beneficiaries*. The appropriations to be made by the municipality in any fiscal year shall be sufficient to pay all pensions due and payable in that fiscal year to all retired members and beneficiaries. The amount of the appropriation in a fiscal year shall not be less than 10% of the aggregate pay received during that fiscal year by members of the retirement system unless, by actuarial determination, it is satisfactorily established that a lesser percentage is needed. *All deductions and appropriations shall be payable to the treasurer of the municipality and he or she shall pay the deductions and appropriations into the retirement system.* [Emphases added.]

Decades after this legislation, in 1978, Michigan voters approved an amendment to the Michigan Constitution known as the Headlee Amendment. Const 1963, art 9, § 31. The Headlee Amendment included a number of provisions related to state and local taxes, stating, in pertinent part:

> Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon. [Const 1963, art 9, § 31.]

"This section prohibits units of local government from levying any new tax or increasing any existing tax above authorized rates without the approval of the unit's electorate." *Midwest Valve & Fitting Co v Detroit*, 347 Mich App 237, 245; 14 NW3d 826 (2023) (quotation marks and citation omitted). Headlee "permits the levying of previously authorized taxes even where they were not being levied at the time Headlee was ratified and even though the circumstances making

-3-

the tax or rate applicable did not exist before that date." *American Axle & Mfg, Inc v Hamtramck*, 461 Mich 352, 357; 604 NW2d 330 (2000).  MCL 141.91 essentially codifies this into law:

> Except as otherwise provided by law and notwithstanding any provision of its charter, a city or village shall not impose, levy or collect a tax, other than an ad valorem property tax, on any subject of taxation, unless the tax was being imposed by the city or village on January 1, 1964.

"In concert, these provisions restrain a local government's ability to assess taxes." *Midwest Valve,* 347 Mich App at 245.

The Legislature minimally modified Act 345 following the 1963 Constitution.  The final sentence of MCL 38.559(2), which applies only in certain situations, states:

> Except in municipalities that are subject to the 15 mill tax limitation as provided by section 6 of article IX of the state constitution of 1963, *the amount required by taxation **to meet the appropriations** to be made by municipalities under this act shall be in addition to any tax limitation imposed upon tax rates in those municipalities by charter provisions or by state law subject to section 25 of article IX of the state constitution of 1963.  [Emphases added.]

It is not disputed that all four municipal defendants created a retirement board in accordance with Act 345.  The issues at hand, according to plaintiffs, arose only recently.

In recent years, defendants imposed a tax to cover contributions to the pension plans and contributions to fund healthcare benefits for retired officers and firefighters.  Defendants contend that this tax is lawful under Act 345, which authorized them to impose a tax to fund "Other Post-Employment Benefits" (OPEB) in addition to pensions.  Plaintiffs disagree that Act 345 is so broad.  Plaintiffs argue that this tax, to the extent it goes toward healthcare, was not authorized before the ratification of the Headlee Amendment, Const 1963, art 9, § 31 and thus, defendants were required to obtain voter approval to impose the tax.  The trial courts decided this issue in defendants' favor, granting summary disposition for defendants in all four cases.  After all but one of the trial courts' decisions, this Court held in *Bate*, 347 Mich App at 785-786, and its companion case, *Ruman v City of Warren*, that Act 345 authorizes taxation to fund broad retirement systems that are not restricted to the administration of pension benefits.  In their appeal, plaintiffs acknowledge that is binding authority and ask this panel to declare a conflict with *Bate*.

## II.  STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo.  *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).  "A motion under MCR 2.116(C)(8)[2] tests the *legal sufficiency* of a claim based on the factual allegations in the

---

[2] Westland and Redford moved for summary disposition under MCR 2.116(C)(10).  However, because this issue can be decided on the pleadings alone, MCR 2.116(C)(8) is the appropriate subrule.

complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2018). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id.* at 160. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id.* Issues of statutory and constitutional interpretation and application are reviewed de novo. *Warren v Flint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 366226); slip op at 3.

"When interpreting a constitutional provision, the primary goal is to determine the initial meaning of the provision to the ratifiers, the people, at the time of ratification." *Bate*, 347 Mich App at 776. "That is, the court applies the common understanding of the people at the time the Constitution was ratified." *Id.* "To effectuate this intent, the court also applies the plain meaning of the terms used in the Constitution." *Id.* Our Supreme Court recently summarized the principles of statutory construction:

> The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. We may consult dictionary definitions to give words their common and ordinary meaning. When given their common and ordinary meaning, the words of a statute provide the most reliable evidence of its intent. [*Schafer v Kent Co*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket Nos. 164975 and 165219) (quotation marks and citation omitted).]

"In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory." *Holliday v Secretary of State*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket Nos. 372241, 372255, and 372256); slip op at 7 (quotation marks and citation omitted).

## III. *BATE* CONTROLS AND WAS CORRECTLY DECIDED

The key question in this analysis is whether MCL 38.559(2) authorized a municipality to include in the tax levied amounts necessary to cover payment of healthcare insurance to retired police and firefighters. Or, as this Court stated in *Bate*, "[t]he crux of the issues on appeal is whether Act 345 permits defendant cities to set aside and use tax dollars to help pay for healthcare benefits to retired firefighters and police officers who are members of the retirement system." *Bate*, 347 Mich App at 782. Noting that the plaintiffs focused on "the terms 'meet' and 'appropriations' as set forth in MCL 38.559(2)," the Court considered dictionary definitions because these terms were not defined in the statute:

> "Appropriate" is defined as "to set apart for or assign to a particular purpose or use[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). The definition of 'appropriation' is 'something that has been appropriated . . . money set aside by formal action for a specific use." *Merriam-Webster's Collegiate Dictionary* (11th ed). "Meet" is defined as "to pay fully: SETTLE[.]" *Merriam-Webster's*

-5-

*Collegiate Dictionary* (11th ed). In light of those definitions, MCL 38.559(2) requires defendant cities to set aside tax dollars so it can fully pay benefits owed under the retirement system. [*Id*. at 782 (alterations in original).]

This Court in *Bate* then addressed the meaning of the terms and phrases "retirement system," "pension," and "other benefits payable" as used in MCL 38.559(2), but which are not defined in the statute. *Id*. at 783. The Court stated:

"Retirement" is defined as "withdrawal from one's position or occupation or from active working life," and "system" is defined as "an organized or established procedure[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). Accordingly, "retirement system" involves the manner in which retirement benefits, such as "pensions" and "other benefits payable," are funded and dispersed under Act 345. "Pension" is defined as "a fixed sum paid regularly to a person," and "one paid under given conditions to a person following retirement from service or to surviving dependents[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). "Other" is defined as "being the one or ones distinct from that or those first mentioned or implied . . . ." *Merriam-Webster's Collegiate Dictionary* (11th ed). [*Id*. (alterations in original).]

The Court determined, "[t]hus, use of the word 'other' was intended to distinguish the term 'other benefits payable' from 'pensions.' " *Id*. The Court continued its analysis:

"Benefit" is defined as "a payment or service provided for under an annuity, pension plan, or insurance policy," and "a service (as health insurance) or right (as to take vacation time)[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). "Payable" is defined as "may, can, or must be paid[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). [*Id*. (alterations in original).]

The Court concluded, "[a]ccordingly, 'other benefits payable' includes healthcare benefits[.]" *Id*. Therefore, the defendant cities are "permitted to appropriate tax dollars to help pay for healthcare benefits to retired firefighters and police officers who are members of the retirement system and entitled to those benefits." *Id*. at 784.

The Court addressed the plaintiffs' argument that the term "other benefits payable" as used in MCL 38.559 referred to MCL 38.556, which described the "retirement benefits payable under" Act 345 "with no mention of healthcare benefits." *Id*. "In short, plaintiffs contend that MCL 38.556 only authorized the payment of pension benefits, disability benefits, and death benefits, and therefore, it does not authorize the payment of healthcare benefits." *Id*. This Court disagreed with the plaintiffs' interpretation, stating:

However, we must give effect to every word, phrase, and clause in a statute, and avoid any interpretation that would render part of the statute surplusage or nugatory. See *South Dearborn* [*Environmental Improvement Assn, Inc v Dep't of Environmental Quality*], 502 Mich [349 ,] [] 361[; 917 NW2d 603 (2018)]. Importantly, MCL 38.556 addresses (1) "[a]ge and service retirement benefits payable under this act"; and (2) "[d]isability and service connected death benefits

-6-

payable under the act . . . ." Moreover, in discussing "age and service retirement benefits," the statute uses the term "retirement benefits," as distinguished from "pension benefits," and it indeed uses the two terms in a manner that suggests that they are not equivalents. Thus, although plaintiffs conflate the terms, "retirement benefits" are broader than "pension benefits," and the fact that MCL 38.556 does not specifically identify healthcare benefits as other "retirement benefits" is inconsequential. When Act 345 is examined as a whole, it expressly identifies that "other benefits" were payable as noted in MCL 38.559(2). Accordingly, like the trial court, we reject plaintiffs' attempt to exclude healthcare benefits from the "other benefits payable" in MCL 38.559(2) by relying on a distorted interpretation of MCL 38.556. [*Id*. at 784-785.]

This Court also rejected the plaintiffs' argument that healthcare benefits are distinct from pension benefits as a matter of law. The plaintiffs relied on *Studier v Mich Pub Sch Employees Retirement Bd*, 472 Mich 642, 667-668; 698 NW2d 350 (2005), but the *Bate* Court stated that this reliance was misplaced, because the Court in *Studier*, 472 Mich at 646-651, "analyzed the term 'accrued financial benefits,' which is a term that appears in Const 1963, art 9, § 24, but not in Act 345." *Bate*, 347 Mich App at 785. The Court stated further that the plaintiffs' argument ignored "that Act 345 references 'pensions' *and* 'other benefits payable,' and refers to 'retirement benefits' as opposed to the narrower term, 'pensions.' " *Id*. The plaintiffs failed to support "their position that healthcare benefits cannot be considered 'other benefits payable.' " *Id*. This Court summarized its conclusion for the issuance of pre-Headlee authorization to impose a tax to fund retiree healthcare benefits:

> In sum, our Constitution requires that the "constitution and law concerning . . . cities . . . shall be liberally construed in their favor." Const 1963, art 7, § 34. When considering this mandate and the plain language of Act 345, defendant cities were permitted under Act 345 to appropriate tax dollars to fund healthcare benefits for retired firefighters and police officers who are members of the retirement system and entitled to those benefits. Because the tax was authorized before the Headlee Amendment was ratified, plaintiffs cannot establish a violation of Const 1963, art 9, § 31. [*Id.* at 785-786.]

The Court declined to consider the plaintiffs' arguments regarding legislative history and proposed amendments because the language of Act 345 was unambiguous, and thus precluded further judicial construction or consideration of extrinsic evidence. *Id*. at 786. The Court would not consider the plaintiffs' argument that the defendant cities violated the Protecting Local Government Retirement and Benefits Act (PLGRBA), MCL 38.2801 *et seq*., because the plaintiffs did not assert this cause of action in their complaints.[3] *Id*. at 787. The Court remarked, "It also matters not that the pension benefits and the healthcare benefits are administered separately; they

---

[3] MCL 38.552a was enacted by 2017 PA 211, and states: "A retirement board under this act, a retirement system under this act, and a city, village, or municipality that is the custodian of funds of a retirement system under this act shall comply with any applicable requirements under the protecting local government retirement and benefits act."

are two components of the same retirement system, and each constitutes an aspect of the retirement benefits that are authorized by Act 345." *Id*. at 787 n 3.

Plaintiffs acknowledge that this Court is bound by MCR 7.215(C)(2) and (J)(1) to follow the precedent set by *Bate* and request a conflict panel. *Bate* is premised on sound principles of statutory interpretation. We decline to declare disagreement with *Bate* to initiate procedures under MCR 7.215(J).

## IV. SEPARATE PENSION PLAN AND OPEB PLAN (DOCKET NOS. 366521, 366888, AND 367810)

Plaintiffs argue that even if *Bate* was correctly decided, a different outcome is warranted because the trial courts disregarded defendants' use of separate pension and OPEB plans. We disagree.

In the Taylor, Southgate, and Redford actions, the substance of plaintiffs' arguments was that the use of separate pension and OPEB plans established that defendants were not in compliance with Act 345, because Act 345 permitted taxation only for the purpose of funding pension plans. Plaintiffs lay out their reasoning as follows: Act 345 authorizes tax payments into a pension plan for the purpose of covering the municipality's "appropriations" under MCL 38.559(2). The "appropriations" are the amounts the municipality must pay to cover its obligations to the pension plan. If there is a separate OPEB plan, the payments into the pension plan do not pay for healthcare because healthcare payments must be made into the separate OPEB plan. Therefore, Act 345 tax monies are not being used to pay for healthcare because the healthcare payments come from a fund other than the pension fund. Plaintiffs allege that defendants try to evade this conclusion by representing the pension plan and OPEB plan as two parts of a unitary "retirement system." Plaintiffs characterize this attempt as a request to disregard the factual reality that the plans are distinct. They argue on appeal that the trial courts erred in granting defendants' request to disregard the distinct nature of the plans.

This Court briefly addressed the issue of separate plans in *Bate*, stating:

> It also matters not that the pension benefits and the healthcare benefits are administered separately; they are two components of the same retirement system, and each constitutes an aspect of the retirement benefits that are authorized by Act 345. [*Bate*, 347 Mich App at 787 n 3.]

We also are not persuaded by plaintiffs' reasoning. If Act 345 authorizes a municipality to collect taxes to pay for retirees' healthcare insurance, there is nothing in the statute to bar a municipality from using separate plans to administer pension benefits and healthcare benefits.

## V. FACTUAL DISTINCTIONS REGARDING WESTLAND'S PLAN (DOCKET NO. 367808)

Plaintiffs Rickey Watts and Susan Watts argue that notwithstanding *Bate*, they raised a factual distinction regarding Westland's plans that precluded summary disposition in Westland's favor.

Unlike the prior issues, which were decided on the parties' pleadings, plaintiffs offered evidence to prove that Westland's OPEB plan cannot be considered part of its retirement system under Act 345. We therefore review this issue under MCR 2.116(C)(10), which provides that summary disposition is proper "when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). The reviewing Court must "review the pleadings, affidavits, and other documentary evidence submitted, make all reasonable inferences therefrom, and determine whether a genuine issue of material fact exists, giving the nonmoving party the benefit of reasonable doubt." *Wheeler v Shelby Charter Twp*, 265 Mich App 657, 663; 697 NW2d 180 (2005).

MCL 38.552(4) provides that the retirement board must "[c]ertify to the governing body of the city, village, or municipality the amount to be contributed by the city, village, or municipality as provided in this act." MCL 38.552(8) requires the board to "[d]isburse the pensions and other benefits payable under this act." MCL 38.553 provides:

> The treasurer of the city, village, or municipality shall be the custodian of all funds of the retirement system and shall be required to give a good and sufficient bond to the retirement board for the faithful performance of his or her duties and the safekeeping of all money collected under this act. The bond shall be paid by the city, village, or municipality. The treasurer shall issue warrants for the disbursement of the funds of the retirement system upon the receipt of a voucher signed by at least 2 members of the retirement board other than the treasurer. The treasurer shall not execute a voucher or warrant unless the voucher or warrant has been previously authorized by resolution adopted by the board.

MCL 38.559(2) states that "[a]ll deductions and appropriations shall be payable to the treasurer of the municipality and he or she shall pay the deductions and appropriations into the retirement system."

The Wattses asserted that Westland's finance director and treasurer, Steve Smith, made three concessions that proved Westland's taxation practices violated Act 345 and the Headlee Amendment. The first concession was that the pension board never certified to the city council the amount to be contributed for OPEB, as required by MCL 38.552(4). The second was that the pension board did not disburse OPEB benefits in accordance with MCL 38.552(8). The third was that Smith never issued a warrant for disbursement of OPEB funds as required by MCL 38.553. Smith also admitted that Westland did not use pension plan funds to pay for OPEB.

We are not persuaded that Smith's admissions establish that Westland's taxation to cover retirees' healthcare benefits are *factually* something other than a benefit under MCL 38.559. The Wattses do not cite any authority that noncompliance with these statutory requirements negates Act 345's authorization of the tax for purposes of applying the Headlee Amendment. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *In re Warshefski*, 331 Mich App 83, 87; 951 NW2d 90 (2020) (quotation marks and citation omitted).

The Wattses argue in their reply brief that this Court should follow the example of *Dailey v San Diego*, 223 Cal App 4th 237; 167 Cal Rptr 3d 123 (2013). *Dailey* involved a complicated factual history, beginning with the defendant city's decisions in 1981 to withdraw from the Social Security system, but to provide health insurance for eligible retirees. *Id*. at 242. In 1985, the city later expanded the retiree health program to include a broader class of employees, including the plaintiffs. *Id*. at 243. In 1996, the voters of the city approved a ballot proposal shifting the cost of the retiree healthcare benefit to the city's retirement system, to be paid by the retirement system's investment earnings. *Id*. In the 2000s, the healthcare benefit program underwent various changes, including a freezing of the monthly and yearly limit to the benefit, as the result of labor union negotiations, a federal lawsuit, and city ordinance amendments. *Id*. at 243-247. The plaintiffs initiated a lawsuit against the city, claiming that an ordinance freezing healthcare benefits was invalid because members of the retirement system did not vote to approve the change. *Id*. at 247. The plaintiffs relied on a city ordinance providing that an "ordinance amending the retirement system which affected the benefits of any employee *under such retirement system*" required "approval of a majority vote of the members of said system." *Id*. at 249-250. The California Court of Appeals concluded that the healthcare benefit was not a retirement benefit under the auspices of the retirement system. *Id*. at 250-254.

"Caselaw from sister states and federal courts is not binding precedent but may be relied on for its persuasive value." *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020). *Dailey* is not persuasive or relevant in this context. *Bate* is a decision by this Court, analyzing the language of a Michigan statute according to well-established principles of statutory interpretation. Although *Dailey*, like the instant case, involves the relationships among retirement benefits, pension benefits, and healthcare benefits, it involves detailed facts and a complex history related to California employment and labor law. For these reasons, the Wattses claims too fail.

Affirmed.

/s/ Adrienne N. Young
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle

-10-